[Filed at Pendleton, May 18, 1889.]

AMES, Appellant, *v.* UNION COUNTY, Respondent.

Whenever It is Proposed to Appropriate the Lands of the Citizen to a Public Use, the proceeding by which it is to be done must conform to the requirements of the statute, and contain such a description of the lands to be so taken as may be ascertained from the record.

In a Petition to Lay out a Road, the beginning, the intermediate points, if any, and the termination, must be certain; otherwise, the county court will not acquire jurisdiction.

Where the Course of the Road from the last point to its termination is described as "thence northwesterly," it is not meant that the road must

run in a direct line to the point of ending, but that the route of the proposed road will be in a northwesterly direction; and so long as this is preserved by the viewers, though there be some deviation from a direct line, the description is sufficiently certain to give the requisite information to those liable to be affected by its establishment.

*T. H. Crawford,* for Appellant.

*J. W. Shelton* and *W. M. Ramsey,* for Respondent.

LORD, J.—This was a proceeding instituted in the commissioner's court, to lay out and establish a public highway. The court having declared the proposed road to be a public highway, ordered the same to be opened, when the plaintiff sued out a writ of review in the circuit court, which, at its September term ensuing, dismissed the writ, and affirmed the judgment of the lower court. From this judgment the appeal is taken.

The contention of the plaintiff is, that the proceedings under which the highway was located and established are void for want of sufficient description of such highway in the petition. His argument is, that the description is so vague and indefinite as not to afford the means of information to those interested of the manner in which the opening of the road would affect them.

It is no doubt true that whenever it is proposed to appropriate the lands of the citizen to a public use, the proceeding by which it is to be done must conform to the requirements of the statute, and contain such a description of the lands to be so taken as may be ascertained from its record. On general principles, then, it will be conceded that the petition must be sufficiently specific to convey to those interested the information of what is desired,—an all-important part of which is the line of the proposed road or highway, which necessarily includes its beginning, course, and termination; and when from the description thus given, the road can be definitely ascer-

tained or located from it, the petition is sufficiently certain and specific in this particular for all practical purposes, which is all the law requires. It does not contemplate that the petitioners for a highway must first procure the services of a surveyor, in order to state in the petition the route of the proposed road with technical accuracy or precision. It is a practical affair, and may be done by practical business men.

"The proceeding," says Mr. Mill, "was intended to be practical, so that the common highways of the country might be established without the employment of a corps of scientific men for the purpose, but that the roads might be established by ordinary practical business men." (Mills on Eminent Domain, sec. 277.) Recognizing, then, to the full extent, the strict rule which ought to govern all proceedings of a character which appropriates the lands of the owner to a public use without his consent, the inquiry is, whether the line of the proposed road is described with sufficient certainty in the petition so as to give to those to be affected by it the requisite information, or whether it is so indefinitely done as to be a nullity.

The description is as follows: "A county road in said county, upon the following line or route, to wit: Commencing at what is known as the Clarke cabin, about forty rods west, and about thirty rods north, from the southeast corner of section 6, township 5 south, of range 41 east, of the Willamette meridian, and running thence northeasterly to the northeast corner of said quarter-section; thence northwesterly to the southeast corner of the northeast quarter of section 36, township 4 south, of range 40 east, of the Willamette meridian; thence northwesterly to the northwest corner of the northeast quarter of section 21, township 3 south, of range 40 east, of the Willamette meridian. Said proposed road to run as near as may be on the line of the survey heretofore made by J. W. Kim-

brell, deputy county surveyor of said county, under an order of this court in the matter of the county road petitioned for by E. Draper *et al.*, the field-notes and plat of which survey were by said Kimbrell filed in the office of the county clerk of said county on the third day of February, 1888, and by said clerk recorded under an order of the county court. The field-notes and plat of which said survey are here referred to as a particular description of said line of said proposed road, and are made a part of this discription."

In the case at bar, the description in both the notice and the petition is the same, so that any defect to which the first would be liable would be equally applicable to the latter.

Our statute provides that all applications for laying out, altering, or locating county roads shall specify "the place of beginning, the intermediate points, if any, and the place of termination of the road." "And these," said Thayer, C. J., "are essential matters in the initiation of such proceeding. The beginning, the intermediate points, and place of termination of the proposed road must be certain; otherwise, the county court will not acquire jurisdiction to lay out or locate it. . . . . A county road cannot be laid out unless the petitioners have in mind the distinct points referred to, and so designate them in their petition that a person of ordinary intelligence need not mistake their location. A variance of a few feet in any of the points required by the statute to be certain would be likely to create serious objections to the location of the road; but however that might be, the statute has prescribed the terms and conditions upon which private property can be subjected to a public easement or servitude, and it must be strictly followed; otherwise, the proceedings will be a nullity." ( *Woodruff* v. *Douglas County, ante,* p. 314.) It will be noted in the description of the road already given.

that the two termini — the place of beginning and the
termination — are definitely fixed, and may be easily
ascertained. Nor is there any objection that these are
sufficiently certain and specific.

The point of objection is, that the highway, after leav-
ing the place of beginning and touching two intermediate
points, fails to mention or specify any intermediate
points in a distance of some ten miles from the last
intermediate point to the place of termination. After
leaving the last intermediate point, the description runs
in this wise. "Thence northwesterly to the northwest
corner of the northeast quarter of section 21, town-
ship 3 south, range 40 east, of the Willamette merid-
ian." It will be observed that "thence northwesterly"
is all the description given from the last intermediate
point to the place of termination. No intermediate
points are specified, and it is insisted that without them
the description is so defective that the line of the road
cannot be ascertained, and consequently that notice of
the intended road, over whose lands it is actually to be
laid, is not given. The termini of the road are certain,
and two intermediate points are definitely stated, and the
line of the road from the last intermediate point to the
place of termination runs in a "northwesterly" direction.
When such a course is given, it is not meant that the
road must run in a direct line without variation or turn-
ing, but that the route of the proposed road will be in a
northwesterly direction, and so long as this is preserved,
though there be some deviation from a direct line, the
description is sufficiently certain to give the requisite
information to those liable to be affected by its establish-
ment.

It is argued however because the plat of the road as
surveyed and laid out by the viewers, and subsequently
adopted and established by order of the court, varies at

some places from a direct line, although preserving the northwesterly direction, that it was necessary to establish intermediate points at such places, and that the notice and petition should contain them; otherwise, such deviations might be so great as to include lands for the road not within the description, and thereby condemn lands for road purposes without notice.

But this conclusion is not only unwarranted, but the viewers would transcend their duties to lay out a road without the route prayed for in the petition.  After the presentation of the petition and proof of notice, etc., the statute makes it the duty of the viewers " to view, survey, and lay out, or alter said road as prayed for in the petition, as near as, in their opinion, a good road can be made at a reasonable expense, taking into consideration the utility, convenience and inconvenience, and expense which will result to individuals as well as to the public if such road shall be established and opened or altered." (Or. Code, sec. 4065.)  This has always been understood to mean that the viewers are to keep within the proposed route of the road as prayed for in the petition; they are to lay out the road as near as, in their opinion, it can be done with a due regard to the considerations named in the statute.  And while to avoid obstructions, save expenses, and to better accommodate the public, it may be necessary to make some deviations, so long as the road laid out and established is within the course specified in the petition and notice, it is not open to the objection here made.  In such case, it is sufficiently certain and specific to give notice to all whose property may be affected by the intended proceeding.  To locate the road without the route prayed for in the petition, or to lay out a road not on a line as described and prayed for in the petition, is no legal notice to those on whose lands it is actually laid, nor to the persons and corporations

whose interests are affected by it. (*Inhabitants etc.* v. *County Comm'rs*, 12 Bush, 356.) To do this would violate a principle repeatedly declared by this court that the property of the citizen cannot be taken for a public use without notice, or that the notice must contain full information of the intended proceeding. (*Minard* v. *Douglas County*, 9 Or. 206; *Benton County* v. *King*, 10 Or. 513.) But the case at bar does not come within that principle. Here the notice and petition was sufficiently specific to give the requisite information, and the road established is within the route described in the petition. In the particular noted, it was not necessary to name intermediate points, for the line of the road as described did not contemplate nor require the establishment of such points to trace its route. It could pursue its course to its termination without them. The description being sufficient in itself to give the requisite information, it is unnecessary to consider whether it could be aided by reference to the survey and field-notes referred to and made a part of such description. As to the proof of the posting of the three notices in the vicinity of the proposed road, which appears in the record, it is clearly competent and sufficient.

The judgment must be affirmed.