Argued and submitted July 2, reversed and remanded October 23, petition for rehearing denied November 13, 1979

STRAWBERRY HILL 4 WHEELERS, et al,
*Petitioners,*

*v.*

BOARD OF COMMISSIONERS FOR THE
COUNTY OF BENTON, et al,
*Respondents.*

(TC 33160, CA 11086, SC 26015)

601 P2d 769

Lynn H. Heusinkveld, Coos Bay, argued the cause and filed briefs for petitioners.

Todd G. Brown, of McClain and Brown, Corvallis, argued the cause and filed a brief for respondents.

LINDE, J.

**LINDE, J.**

Plaintiffs' effort to challenge the vacation of a county road by means of a writ of review, ORS 34.010 - 34.100, once again brings to this court the recurring problem of the use of the writ for judicial review of the actions of local governments.

Defendants, the Board of Commissioners of Benton County, conducted statutory procedures under ORS 368.565 - 368.582 on a resolution proposing to vacate a portion of County Road No. 26460, known as Old Peak Road. Spokesmen for the complaining associations appeared at the hearing and presented testimony in opposition to the proposal. After the board nevertheless decided to vacate the stretch of road in question, plaintiffs filed a petition for a writ of review attacking the legality of the board's order in substance and procedure. The circuit court granted defendants' motion to quash the writ on the ground that road vacation procedures are legislative and not judicial or "quasi-judicial" and therefore are not reviewable by writ of review under ORS 34.040.[1]

■ The circuit court's order was affirmed by a divided Court of Appeals, sitting in banc. *Strawberry Hill 4-Wheelers v. Benton Co. Bd. of Comm.*, 37 Or App 575, 588 P2d 65 (1978). The majority, in an opinion by

---

[1] ORS 34.040:

"The writ shall be allowed in all cases where the inferior court, officer, or tribunal other than an agency as defined in subsection (1) of ORS 183.310 in the exercise of judicial or quasi-judicial functions appears to have:

"(1) Exceeded its or his jurisdiction;

"(2) Failed to follow the procedure applicable to the matter before it or him;

"(3) Made a finding or order not supported by reliable, probative and substantial evidence; or

"(4) Improperly construed the applicable law;

to the injury of some substantial right of the plaintiff, and not otherwise. The fact that the right of appeal exists is no bar to the issuance of the writ."

Judge Johnson, found that the county's action in vacating the road had the characteristics of legislative rather than adjudicative action. Judge Thornton's dissent for three members of the court maintained that the majority's decision departed from the established statutory scheme for the review of county decisions in road matters. Having allowed review to examine these competing positions, we conclude that notwithstanding the legislative elements in the county's decision to vacate the road, the writ of review should not have been quashed.

The sources of the problem and of our conclusion take us back to the earliest years of the state's history.

### The writ of review and "county business."

The functions of county government and of the writ of review have been intertwined from the beginning. County "courts" were known in England as early as the 11th century and in the colonies during the 18th century.[2] Historically, the use of the term "court" implied no distinction of adjudicative from lawmaking or executive functions, as is evident from its use to describe both the court surrounding a monarch and also a legislature like the "General Court" of Massachusetts.[3] When county government was established in the Oregon territory in 1854, the statute assigned the management of county business but no judicial powers to three county commissioners. Statutes of Oregon, An Act Relating to County Commissioners, Jan. 24, 1854. The state constitution, prepared in 1857 and effective in 1859, authorized county courts as part of the state's judicial system, to be conducted by an

---

[2] For a description of the English county courts, *see* 1 W. Holdsworth, *A History of English Law* 64-75 (1922); H. Potter, *An Historical Introduction to English Law and its Institutions* 72-77 (1932). County courts sat in the American Colonies during the 18th century, *see* R. Pound, *Organization of Courts* 83-89 (1940), and in the states during the 19th century, *see* J. Works, *Courts and Their Jurisdiction* 360-365 (1894), to the present.

[3] Mass Const, Pt 2, ch 1, § 1 (1780). Indeed, the word "court" is sometimes used to describe an assembly of the entire membership of a community, such as a religious congregation, *see Jones v. Wolf,* 443 US 595, 99 S Ct 3020, 61 L Ed 2d 775 (1979).

elected county judge. Or Const art VII (orig) §§ 1, 11-14. Section 12 authorized the Legislative Assembly to provide for the election of two county commissioners "to sit with the County Judge whilst transacting County business." The General Laws of 1859 provided for the election of a county judge who would exercise the powers of the county court. The statute was almost entirely concerned with proceedings within the court's judicial jurisdiction, except for one section that provided that the county court "shall have cognizance of all county business, and perform the same duties that the board of county commissioners of the several counties were required heretofore to perform," governed by the laws previously governing the county commissioners. Review from the county judge's decisions was by appeal to the circuit court. General Laws 1859, An Act to Organize County Courts, §§ 11, 12, 17. June 4, 1859.

The state's original Code of Civil Procedure, enacted in 1862, set forth the provisions for judicial proceedings, including the several writs, and also the powers of the county courts. General Laws 1862, §§ 572-639, 867-878. Our continuing difficulties with the method of review of county action date from these initial acts, which continue essentially unchanged while modern ideas of the "jurisdiction" of local government and its lawmaking powers have undergone substantial reconsideration. *See, e.g., Nyman v. City of Eugene,* 286 Or 47, 57-58, 593 P2d 515 (1979).

The 1862 code listed the powers of the county courts under two heads. The county court had *jurisdiction* of actions at law involving claims up to $500 and *exclusive jurisdiction* in actions for forcible entry and detainer and in probate matters. General Laws 1862, §§ 868, 869.[4] With the participation of the two nonjudicial commissioners, the county court had the *"authority and powers* pertaining to county commissioners, to

---

[4] General Laws, 1862:

"§ 868. The county court has jurisdiction, but not exclusive, of actions at law and all proceedings therein, and connected therewith,

*transact county business."* (Emphasis added.) County business was specified to include construction of county buildings, to provide offices and supplies for county officials, and to *establish, vacate or alter county roads* and bridges, to grant licenses, to levy county taxes, to look after paupers, to care for county property, and to settle contract claims against the county.[5] Gen Laws § 870. This list of "county business" still constitutes the

where the claim or subject of the controversy does not exceed the value of five hundred dollars, and exclusive jurisdiction of actions for forcible entry and detainer, without reference to the value of the property.

"§ 869. The county court has the exclusive jurisdiction, in the first instance, pertaining to a court of probate; that is:

"1.  To take proof of wills;

"2.  To grant and revoke letters testamentary, of administration, and of guardianship;

"3.  To direct and control the conduct, and settle the accounts of executors, administrators and guardians;

"4.  To direct the payment of debts and legacies, and the distribution of the estates of intestates;

"5.  To order the sale and disposal of the real and personal property of deceased persons;

"6.  To order the renting, sale.or other disposal of the real and personal property of minors;

"7.  To take the care and custody of the person and estate of a lunatic or habitual drunkard, and to appoint and remove guardians therefor, to direct and control the conduct of such guardians, and to settle their accounts;

"8.  To direct the admeasurement of dower."

[5] General Laws, 1862:

"§ 870. The county court has the authority and powers pertaining to county commissioners, to transact county business; that is:

"1.  To provide for the erection and repairing of court-houses, jails, and other necessary public buildings for the use of the county;

"2.  To provide offices and furniture, books, stationery, fuel and light therefor, for the sheriff, county clerk and treasurer, or other county officers;

"3.  To establish, vacate or alter county roads or highways within the county, or any other necessary act relating thereto, in the manner provided by law;

first ten items of ORS 203.120. The law distinguished clearly between the county court's judicial jurisdiction and its conduct of county business. Section 876 prescribed that the court was to dispose first of its cases at law, second of its probate business (these by the county judge alone) and third of county business, with the participation of the commissioners.

The 1862 code was equally explicit on the mode of reviewing the actions of county courts. Section 875 provided that the code's provisions for appeals to the circuit court were to apply "to judgments and decrees of the county court in all cases, but not to its decisions given or made in the transaction of county business. In the latter case, the decisions of the court shall only be reviewed upon the writ of review provided by this code." Again, ORS 203.200 still continues this provision: "The decisions of the county court made in the transaction of county business shall be reviewed only upon the Writ of Review provided by the civil procedure statutes." However, the code's writ of review was provided only to review "judicial functions" or acts

---

"4. To provide for the erection and repairing within the county, of public bridges upon any road or highway, established by public authority;

"5. To license ferries, and fix the rates of ferriage;

"6. To grant grocery and all other licenses authorized by law; where the authority to do so, is not expressly given to some other tribunal;

"7. To estimate and determine the amount of revenue to be raised for county purposes, and to levy the rate necessary therefor, together with the rate required by law for any other purpose, and cause the same to be placed in the hands of the proper officer for collection;

"8. To provide for the maintenance and employment of the county or transient paupers, in the manner provided by law;

"9. To have the general care and management of the county property, funds and business, where the law does not otherwise expressly provide;

"10. To compound for or release in whole or in part any debt or damages arising out of contract due the county, and for the sole use thereof, upon such terms as may be just and equitable."

exceeding the "jurisdiction" of an inferior "court, officer or tribunal." Section 575 of the 1862 act, much like ORS 34.040, *supra* note 1, read:

"The writ shall be allowed in all cases, where there is no appeal or other plain, speedy and adequate remedy, and where the inferior court, officer or tribunal in the exercise of judicial functions, appears to have exercised such functions erroneously, or to have exceeded it or his jurisdiction, to the injury of some substantial right of the plaintiff, and not otherwise."

From the distance of more than a century, the 1862 code seems self-contradictory. It restricts the writ of review to the review of decisions in the exercise of "judicial functions" and "jurisdiction." It carefully divides the functions of county courts between a judicial jurisdiction, exercised by the county judge alone, and the transaction of county business by the three-member county commission, which is not an exercise of "jurisdiction." Then the writ of review is expressly made the exclusive means to review the transaction of county business, while the judicial acts of the county court are made reviewable by appeal to the circuit court and consequently not by writ of review.

It is not surprising that this arrangement has occasionally confounded courts and counsel for a hundred years. While no resolution of the dilemma is wholly logical, it could be dealt with in one of two ways. Section 875, now ORS 203.200, could be read literally to place review of all transactions of county business under the writ of review, regardless whether they otherwise fit either the writ's "judicial function" criterion or the procedure of review on a record brought up from the county court. Judicial review of all county transactions would then be forced to fit this Procrustean bed of review upon whatever documentary record bearing on the transaction could be produced. The establishment or vacation of a county road is expressly made an item of county business, as stated above. Alternatively, the section could be read to apply the writ of review only to such "decisions" of a county

[598]

court as might be described as "judicial functions" or the exercise of "jurisdiction," though occurring in the transaction of county business rather than in the judicial work of the county court.

*Review of county road decisions.*

This court early adopted the second approach, on the characteristic premise that the statutes were intended only to codify the reach of the preceding writ of certiorari in similar matters. ORS 34.010 itself states that "[t]he writ heretofore known as the writ of certiorari is known in these statutes as the writ of review." Courts of the period also saw nothing strange in regarding the location of roads as the exercise of the county court's "jurisdiction," in part because it involved taking privately owned land and assessing benefits and damages to the landowners concerned. *See, e.g.,* Elliott & Elliott, Roads and Streets 212, 218, 232 (1890). Thus in *Thompson v. Multnomah County,* 2 Or 34 (1861), decided the year before the code was enacted, the court followed English, Massachusetts, and New York precedents to hold that the proceedings of county commissioners to lay out or vacate public roads were "judicial proceedings" subject to examination by writ of certiorari, except for the assessment of damages, for which an appeal was available. 2 Or at 38-39. After the enactment of the statutory writ of review, the court in *Burnett v. Douglas County,* 4 Or 388 (1873), still following certiorari cases from eastern states, denied its use to review a county court's cancellation of a tax levy because it was a "general order" not affecting particular taxpayers, without noting that the estimate and determination of the rate of county taxes appeared on the statutory list of county transactions which were to be reviewed only by writ of review. But it reviewed the "jurisdiction" of a county court to vacate an old road and open a new one upon a writ of review, *Johns v. Marion County,* 4 Or 46 (1870). Again, *C. & G. Road Co. v. Douglas County,* 5 Or 280 (1874) affirmed that the writ of review would lie to challenge the "jurisdiction" or the procedures of the county court in a proceeding to locate a road.

[599]

The struggle to fit review limited to "judicial functions" to the "transaction of county business" continued to cause trouble apart from road cases. In *Mountain v. Multnomah County,* 8 Or 470 (1880), the court saved a claim for payment pressed by means of a writ of review, over the county's objection that the claimant had a common law action, by holding that the county court "had no jurisdiction to disallow" plaintiff's claim; but when a sheriff chose an action at law to recover fees from a county over that county's objection that a writ of review was the only remedy, the court saved his claim in turn on the ground that no audit was needed and thus no "jurisdiction" was exercised. *Crossen v. Wasco County,* 10 Or 111 (1882). That opinion found a basis for the second of the alternative statutory constructions mentioned above in the word "decisions": "The 'decisions' given or made in the transaction of county business, referred to in section 875, which can only be reexamined by writ of review under the subdivisions of section 870, are judicial in their nature or character, and concern public affairs." 10 Or at 114. *See also Pruden v. Grant County,* 12 Or 308 (1885), *Frankl v. Bailey,* 31 Or 285 (1897). Oregon City in 1898 was able to use the writ of review to make Clackamas County turn over the city's share of county road taxes, because the apportionment of the amount by the county court was a "judicial act," *Oregon City v. Clackamas County,* 32 Or 491, 52 P 310 (1898), following *Oregon City v. Moore,* 30 Or 215, 220, 46 P 1017 (1896), but the city failed in the same attempt in 1926 because the apportionment did not require the county court "to exercise any judicial function." *Oregon City v. Clackamas County,* 118 Or 546, 552-553, 247 P 772 (1926).

In road cases, the writ of review remained the proper procedure to test the "jurisdictional" prerequisites for a county court's decisions. *Ames v. Union County,* 17 Or 600 (1889); *Roe v. Union County,* 19 Or 315 (1890); *Gaines v. Linn County,* 21 Or 425 (1891); *Latimer v. Tillamook County,* 22 Or 291 (1892); *Vedder*

*v. Marion County,* 22 Or 264 (1892). In that year, also, *Leader v. Multnomah County,* 23 Or 213, 31 P 481 (1892), held that an appeal to the circuit court was limited to the county court's assessment of damages; the underlying decision on locating the road could be reviewed only by writ of review.

In the second appeal in *Vedder v. Marion County,* 28 Or 77 (1895), however, the court stated that review under the writ did not extend to the county court's conclusions about the utility of a road, which the court characterized as a "legislative question." 28 Or at 84. Justice Moore's discussion of this point in *Vedder* comes close to the contemporary view expressed in Judge Johnson's majority opinion of the Court of Appeals. We return to it below. But this did not prevent the continued use of the writ of review to challenge a county's procedures in matters of road locations. *See, e.g., Jones v. Polk County,* 36 Or 539, 60 P 204 (1900), also written by Justice Moore; *Palmer Lumber Co. v. Wallowa County,* 60 Or 342, 118 P 1013 (1911); *Heuel v. Wallowa County,* 76 Or 354, 149 P 77 (1915); *Giesy v. Marion County,* 91 Or 450, 178 P 598 (1919). The statutory command that the writ of review is the "only" mode of review seems at times to have been ignored, *see Sime v. Spencer,* 30 Or 340, 47 P 919 (1897) (injunction); *Lauderback v. Multnomah County,* 111 Or 681, 226 P 697 (1924) (injunction); but in *Holmes v. Graham,* 159 Or 466, 80 P2d 870 (1938), the court rejected a suit in equity to set aside a resolution vacating a road on the ground that the writ of review was the proper remedy. *See also Re Petition of Reeder,* 110 Or 484, 222 P 724 (1924) ("jurisdictional" defects in road proceedings not reviewable on appeal from assessment of damages).

■ In summary, from the beginning of statehood the county courts, when transacting "county business" rather than adjudicating cases as part of the state's judicial system, were regarded more as administrative tribunals than as local legislatures. While all their

"decisions . . . in the transaction of county business" were made reviewable "only upon the writ of review," *see* ORS 203.200, the court understood "decisions" to mean what would today be called administrative adjudications, but not "ministerial" actions or the kind of discretionary choices of policy that could be described as "legislative." This view of the use and limits of the writ of review was applied in judicial review of county road controversies for at least 75 years. The statutory framework remains essentially unchanged. Thus we agree with the dissenters in the Court of Appeals that the writ of review remains the proper means of testing compliance with the procedures required for county decisions to locate, relocate, or vacate a county road. The problem, identified in the second *Vedder* case, *supra,* concerns not so much the availability of the writ of review as its scope: Whether or how far a court may reexamine those components of a county's decision in a road matter that represent policy choices and might therefore be described as "legislative" in character.

*Policy choices in local administration of state laws.*

When a governmental action is characterized as "legislative" or "adjudicative," there is the risk that the characterization will be carried beyond the specific issue being decided. The distinction between rulemaking and adjudication is not always easy even when applied to an executive agency administering only delegated authority. It becomes doubly difficult when applied to action by elected local boards, not organized on the principle of separation of powers, which administer state laws but are also the politically accountable policymakers of local government. *See, e.g., Fifth Avenue Corp. v. Washington County,* 282 Or 591, 598-605, 615-621, 581 P2d 50 (1978), *Anderson v. Peden,* 284 Or 313, 325, 587 P2d 59 (1978).

Generally, to characterize a process as an adjudication presupposes that the process is bound to result in a decision and that the decision is bound to apply

preexisting criteria to concrete facts. The latter test alone proves too much; there are many laws that authorize the pursuit of one or more objectives stated in general terms without turning the choice of action into an adjudication. Thus a further consideration has been whether the action, even when the governing criteria leave much room for policy discretion, is directed at a closely circumscribed factual situation or a relatively small number of persons. The coincidence both of this factor and of preexisting criteria of judgment has led the court to conclude that some land use laws and similar laws imply quasijudicial procedures for certain local government decisions, as in *Fasano v. Washington County Comm.,* 264 Or 574, 507 P2d 23 (1973) and *Petersen v. Klamath Falls,* 279 Or 249, 566 P2d 1193 (1977), thereby bringing them also within review by writ of review. *Cf. Brooks v. Dierker,* 275 Or 619, 552 P2d 533 (1976).

Such determinations imply no constitutional or other generalizations about such decisions being either legislative or adjudicative for all purposes. *See, e.g., Western Amusement v. Springfield,* 274 Or 37, 42, 545 P2d 592 (1976). The separate reasons for implying procedural safeguards modeled on adjudications must be kept in sight. One reason is to help assure that the decision is correct as to facts, another is to help assure fair attention to individuals particularly affected. When the preexisting criteria governing a factual situation are quite exact and designed to leave little room for unguided policy choice, and the decision depends on disputed facts, inferences, or predictions, quasijudicial procedures can allow those most concerned to participate in establishing the pertinent factual premises even when the decision concerns many people in a wide area. On the other hand, when the criteria applied in a decision of small compass allow wide discretionary choice, a formal hearing procedure is not designed to "judicialize" factfinding, which may not be at issue. Rather it is designed to provide the safeguards of fair and open procedures for the relatively few

individuals adversely affected, in lieu of the political safeguards on which our system relies in large scale policy choices affecting many persons.

Of course, nothing prevents a law or a charter from imposing detailed procedural safeguards such as notice, prior inquiries and reports, and public hearings on a process of legislative policymaking. This may often seem appropriate when important individual or community interests are at stake, as shown by common provisions governing the adoption of ordinances, budgets, and the like. *See, e.g., Fifth Avenue Corp. v. Washington County, supra.* So it was provided in the statutes governing the location, alteration, and vacation of county roads. *See* ORS 368.405 - 368.620. The fact that a policymaking process is circumscribed by such procedural requirements does not alone turn it into an adjudication. We have referred above to the general characteristics of adjudications that the process, once begun, calls for reaching a decision and that the decision is confined by preexisting criteria rather than a wide discretionary choice of action or inaction. The question for present purposes is how far ORS 368.405 - 368.620 made the defendants' decision to vacate a stretch of Old Peak Road a "judicial or quasi-judicial function" within the meaning of ORS 34.040.

*Road vacation procedure.*

The statutes provide that proceedings to vacate a road may be begun upon a petition or upon the county court's own motion, ORS 368.565; that the county court may reject the petition or order the county surveyor or roadmaster to make a report, which shall include his "opinion" on the benefits of the road and the advisability of the proposed action, ORS 368.570; and that if such a report is ordered, the county "governing body"(apparently used synonymously with "county court" in adjoining sections) shall conduct a public hearing thereon after giving both public notice and notice by certified mail to specially interested landowners. ORS 368.575. So far the prescribed procedures do not necessarily show the process to be a

[604]

"judicial function." The key to its character lies in ORS 368.580. That section provides:

"(1)    On the day set for hearing the report mentioned in ORS 368.570, the county court shall consider the report, together with the petition or resolution and any objection that is made to reducing the road in width or vacating the road.

"(2)    If the road may be useful as a part of the general road system not reduced in width, the petition for reduction in width shall be denied, but if the public will be benefited by the reduction in width of the road then the county court may order the reduction in width of the road or any part thereof.

"(3)    If the road may be useful as a part of the general road system it shall not be vacated, but if the public will be benefited by the vacation then the county court may vacate the road or any portion thereof.

"(4)    If the county court finds that the road or any portion thereof is burdensome to maintain, is not needed as a part of the county road system but should continue to be a public road, and the public will be benefited thereby, and if no person residing on said road and depending thereon for access appears in protest, the county court may by order declare the said road or portion thereof to be a road of public easement and no longer a county road.

"(5)    If the county court determines to reduce the width of the road or any part thereof, or to vacate the road or any part thereof, it shall declare the road to be reduced in width or vacated as the case may be and file the order with the county clerk. Thereafter the road shall be reduced in width or vacated as the case may be."

Does this statute require the county court to reach a decision after the hearing, as in an adjudication, or may it indefinitely postpone or abandon the issue like a legislative proposal? And is the decision confined by preexisting standards to be applied to the facts, or is it largely a discretionary choice?

The statutory scheme appears to be a hybrid. Evidently the county court is not compelled to go forward

with proceedings upon every petition; it may reject the petition. ORS 368.570. Although the question is not now at issue, it appears as if the county court may at any time withdraw a proposal made on its own motion but perhaps must decide for or against a proposal initiated by petition once the report and hearing are completed. After the hearing, if certain stated criteria are satisfied the court "may" order the road reduced in width or vacated, but if the road may be generally useful it "shall" not be vacated or reduced. ORS 368.580. Although affirmative action is optional, the statute appears to contemplate that the county court will eventually reach and pronounce some decision whether to act or not.

■    As stated above, we conclude that although the county court's action may eventually turn on a discretionary choice, the statutory design sufficiently channels discretion by factfinding procedures and broadly stated criteria to qualify as a "judicial" or, since 1973, a "quasi-judicial" function for purposes of the writ of review under ORS 34.040. That was the original understanding, as the long line of earlier decisions shows. Compliance with the statutory procedures is subject to judicial examination under ORS 34.040(2). However, as held in the second *Vedder* decision, this examination does not extend to that element of the county court's decision which is an exercise of discretionary policy judgment. That case involved the issue of discretion whether to establish a road after a favorable report of the viewers as well as to vacate one. The court stated:

> "The legislature has delegated to the county court the authority to establish, alter, and vacate county roads, and as the legislature may determine when the necessity for a public road exists, so the same authority may be exercised by the county court; and if there were no statute vesting it with this discretion, the court, by implication, could exercise such discretion, unless prohibited by statute. Whether a proposed road will subserve the public need or convenience is a question for the legislature, and not for the judiciary:

*Sherman* v. *Buick,* 32 Cal. 241 (91 Am. Dec. 577); *Commonwealth* v. *Roxbury,* 8 Mass. 457; and hence the county court, in determining its utility, acts in a legislative capacity. The authority is not only given by implication, but the statute, section 4065, in positive terms grants this power to the county court, and authorizes it to exercise a discretion in the matter; and hence the conclusion reached by the county court upon these legislative questions is not subject to review: *State* v. *Bergen,* 24 N.J.L. 548. . . ."

28 Or at 83-84.[6] The court affirmed the circuit court's dismissal of the writ of review.[7]

---

[6] Preceding the quoted sentences, the court quoted from *Commissioners v. Bowie,* 34 Ala 464 (1859):

> " 'Upon the question of the expediency of opening or altering a public road, that court exercises a *quasi* legislative authority, and its decision is not revisable. In the exercise of that authority, it does not act alone upon evidence produced according to legal rules, but is guided, to some extent, by its knowledge of the geography of the country, the wants and wishes of the people, and the ability of the neighborhood to keep the road in repair.' "

28 Or at 83. This court similarly described a city's authority in road vacations as legislative in *Portland Baseball Club v. Portland,* 142 Or 13, 18 P2d 811 (1933). Since ORS 203.200 does not apply to cities, the choice between the remedy of injunction and of a writ of review was not the issue.

[7] The opinion implied that the dismissal was proper because the county court's action was within its discretion and not unlawful, rather than that it should properly have been challenged by some proceeding other than a writ of review.

Much procedural confusion can be attributed to the fact that the legal characterization of the governmental action involved, for instance as "legislative," "ministerial," "discretionary," or "judicial or quasi-judicial," decides not only the merits of the challenge but at the same time the propriety of the petitioner's choice of a remedy and procedure. The statutes and past decisions discussed in this case illustrate the pitfalls of proceeding by such characterizations. Here, for instance, the Court of Appeals defined the issue on which it divided to be not whether defendants were free to make the choice they did but whether the choice could be challenged by writ of review; yet the majority decided the latter issue by deciding the former. The same characteristically happens with respect to the remedy of mandamus.

The system of separate writs to review separate kinds of governmental action was criticized more than 20 years ago in these terms:

> "An imaginary system cunningly planned for the evil purpose of thwarting justice and maximizing fruitless litigation would copy the

Thus, if the present plaintiffs' petition had been limited to allegations that defendants' decision was wrong on the merits because the road "may be useful as a part of the general road system" or because "the public [would not] be benefited by the vacation," ORS 368.580, the petition should have been dismissed. Dismissal would be proper, not because the writ was the wrong choice of remedy, but because these are value judgments entrusted to the county court, at least unless it is alleged that the county court has made or

major features of the extraordinary remedies. For the purpose of creating treacherous procedural snares and preventing or delaying the decision of cases on their merits, such a scheme would insist upon a plurality of remedies, no remedy would lie when another is available, the lines between remedies would be complex and shifting, the principal concepts confusing the boundaries of each remedy would be undefined and undefinable, judicial opinions would be filled with misleading generalities, and courts would studiously avoid discussing or even mentioning the lack of practical reasons behind the complexities of the system.

"The system of extrardinary remedies is brimming over with these qualities. . . .

. . . .

"The fountainhead of evils in state systems for review of administrative action is the plurality of remedies. The needless plurality is complicated to an unbelievable extent by uncertainties about each of the extraordinary remedies. The cure for plurality is a single remedy. The cure for the extraordinary remedies is complete abolition, both in form and in substance. All reviewable administrative action should be reviewable by petition for review, whether the action is judicial, legislative, executive, or something else, . . .

" . . . The manner of review and the relief afforded may depend upon the nature of the administrative action, but the form of proceeding should not.

"Legislation should provide for a single form of proceeding for review of administrative action in the courts of each state. . . ."

K. C. Davis, *Administrative Law Treatise,* §§ 24.01, 24.07 (1958). However, this court can do little to simplify the system unless and until statutes such as ORS 203.200 and others governing review of local governmental actions are absorbed, by rules of the Council on Court Procedures or by legislation, into a single, comprehensive form of judicial review of all such governmental actions regardless of characterization and of the ultimate remedy. *See also Gruber v. Lincoln Hospital District,* 285 Or 3, note 2 at 8, 588 P2d 1281 (1979).

adopted findings that are inconsistent with its conclusion. However, plaintiffs' petition also alleged that "the Board of Commissioners erroneously proceeded in exercise of its road vacation function without jurisdiction." While this allegation does not specify what procedural failure, if any, undermined the regularity of the proceedings, this lack of specificity was not the stated ground of the motion to quash nor of the circuit court's dismissal of the writ. Since we have held that, contrary to the circuit court's assumption, the writ of review is still a proper means of challenging road vacation proceedings, the decision below will have to be reversed and the case returned to that court.

*Petitioners' right to the writ.*

Defendants also questioned petitioners' "standing" to pursue a remedy by writ of review.[8] This issue, like the foregoing, has long been complicated by the extension of the writ to local government actions that combine some adjudicatory elements with policy-making for a large number of affected persons. *See, e.g., Duddles v. City Council of West Linn,* 21 Or App 310, 535 P2d 583 (1975).

■ ORS 34.020 provides that "[a]ny party to any process or proceeding before or by any inferior court, officer, or tribunal may have the decision or determination thereof reviewed for errors, as provided in ORS 34.010 to 34.100, and not otherwise." Who is a "party" to a "process or proceeding" may be apparent when the "inferior court, officer, or tribunal" performs a conventional adjudication to determine the rights or privileges of one or more named parties, but it is not so apparent when a local government performs a "judicial or quasijudicial function" in transacting such

---

[8] References to "standing," without more, risk treating this term as a generic concept whose contours may be drawn indiscriminately from decisions interpreting diverse statutes or U S Const art III, § 2, or from the academic literature. But statutes often provide differentiated requirements for "standing" before an agency or to obtain different judicial remedies. *See, e.g., Gruber v. Lincoln Hosp. Dist.* 285 Or 3, 588 P2d 1281 (1979) (declaratory judgment); *Marbet v. PGE* 277 Or 447, 561 P2d 154 (1977) (administrative procedure act).

[609]

business as, for instance, the location or vacation of a county road. Neither chapter 34 itself nor the statutes governing the "county business" here in question, ORS 203.110 - 203.120, 203.170 - 203.200, ORS 368.565 - 368.582, define who is a "party" to the transaction of such county business.

■ ORS 368.575 provides that notice of hearing the report on a proposal to vacate a road shall be mailed to property owners adjoining the road, and this requirement no doubt makes them statutory "parties" for purposes of the writ of review. So, we assume, are the petitioners when a proposal began by a petition under ORS 368.565. But those are not necessarily the only "parties." The decision to vacate a road is not a private dispute between petitioning freeholders and abutting landowners. Many other users or nonusers will often be just as interested in the beneficial or harmful consequences of a road decision; indeed, an adjoining landowner's particular interest merely reflects his actual or potential use and the resulting value of his land, or perhaps his exposure to the adverse impact of an unwanted road. Thus the statute also requires public notice at the county seat and in the vicinity of the road in question, and it directs the county court to consider the report "together with the petition or resolution and any objection that is made to . . . vacating the road." ORS 368.575(1)(b), 368.580(1). Together, these provisions contemplate that objections may be received before or at the hearing by some persons who were entitled to public notice rather than notice by mail.

If no one other than petitioning freeholders and adjoining landowners could become "parties" for purposes of ORS 34.040, the remainder of the affected community arguably might have no means to obtain review at all, as long as ORS 203.200 makes the writ the "only" mode of review. But we think that other interested persons can become "parties" to the proceeding before the county court. Since none of the statutes

deals with such matters as "intervention" in proceedings for the transaction of county business, such procedural rulings are necessarily left to the county court in the first instance, subject to review of a claim that recognition as a party was unlawfully denied.

■ ■ True, local policymakers are likely to be more concerned with giving those who appear at hearings a chance to speak than about distinguishing witnesses from "parties" with an eye toward possible judicial review. That distinction is more familiar to judicial tribunals than to local governments when instructed to act "quasijudicially." However, mere participation as a witness at the hearing alone does not entitle one to relief by writ of review. ORS 34.040 states that the writ shall be allowed when the inferior tribunal appears to have committed one of four specified kinds of error "to the injury of some substantial right of the plaintiff, and not otherwise."[9] As a result, a plaintiff seeking relief against a "transaction of county business" must show (1) that he suffered an identifiable injury to an interest of some substance, and (2) either that he participated in some form in the proceeding before the county court or that he was entitled to participate but failed to do so for lack of proper notice or other reasons beyond his control. This court early held that the facts asserted to qualify the petitioner as a party must be alleged in the petition. *Raper v. Dunn,* 53 Or 203, 99 P 889 (1909), *Castel v. Klamath County,* 56 Or 188, 108 P 129 (1910). These decisions also assumed that these facts bearing on a petitioner's right to relief by the writ would appear in the record of the inferior tribunal. But under modern conditions that may often not be true in some of the governmental proceedings to which review under chapter 34 has been extended. Thus the Court of Appeals has held

---

[9] The potential pitfalls of review by writ of review are multiplied by ORS 34.080, which directs service of the writ "by delivery to the opposite party in the suit or proceeding sought to be reviewed," thus requiring identification of one or more "opposite" parties. *See A & X, Inc. v. Common Council of the City of Eugene, Dahl,* 41 Or App 171 and cases cited at 174-175, 597 P2d 851 (1979).

that a circuit court may have to take evidence to decide the issue, and the propriety of such a procedure has not been argued in this case. *See Duddles v. City Council of West Linn, supra* at 328-331. *Cf.* also *Clark v. Dagg,* 38 Or App 71, 588 P2d 1298 (1979); *Johns v. Marion County,* 4 Or 46, 49 (1870).

■ In this case, plaintiffs' petition alleged that the Strawberry Hill 4 Wheelers had communicated their interest in continued use of the Old Peak Road to the defendant county commissioners in a number of ways, including an offer to contract for the maintenance of the road. Plaintiffs also attached to the petition a copy of the minutes of the county board's meeting at which members of the organization testified to their past and intended use of the road in question. This sufficed as an allegation of plaintiffs' interest. Defendants moved to quash the writ on the ground that the circuit court lacked jurisdiction to review road vacation proceedings by writ of review because such proceedings are solely legislative in nature, and the circuit court quashed the writ on that ground. That reason was erroneous, in view of the history of the writ reviewed above. The circuit court did not address the question whether plaintiffs have shown an injury to an interest sufficient to satisfy ORS 34.040 and heard no evidence or argument on that issue.

For the foregoing reasons, the court's judgment following the order quashing the writ must be reversed and the case remanded to determine, first, whether plaintiffs in fact had an interest in the maintenance of the disputed road sufficient to entitle them to relief under ORS 34.040 if defendants' decision to vacate the road was legally vulnerable, and if the answer is affirmative, then to determine whether the decision was vulnerable on any of the grounds stated in ORS 34.040 short of substituting its view for that of the commissioners on the policy judgment of the public need, convenience, or utility of the road.

Reversed and remanded.