618 P.2d 960 (1980)
289 Or. 899
ROSBORO LUMBER COMPANY, Appellant,
v.
Walter R. HEINE, Harry Carson, Jr., and Pat McCarthy, County Commissioners of Marion County, Oregon, Respondents.
No. 1269; SC 26669.
Supreme Court of Oregon, In Banc.[*]
Argued and Submitted June 25, 1980.
Decided October 28, 1980.
Rehearing Denied December 16, 1980.
*961 Richard Bryson, Eugene, argued the cause for appellant. With him on the briefs was Bryson & Bryson, Eugene.
Larry Jon Pound, Marion County Asst. Legal Counsel, Salem, argued the cause and filed the brief for respondents.
TONGUE, Justice.
This is a mandamus proceeding in the Oregon Tax Court by which the petitioner, a taxpayer, seeks to compel the respondents, members of the Marion County Board of Commissioners, to pay to it a tax refund of $40,505. The Tax Court dismissed the proceeding for lack of jurisdiction. Petitioner appeals.[1]
The petition for an alternative writ of mandamus alleged that petitioner was the owner of timber and land in Marion County; that in 1959 the Department of Revenue made a cruise of the timber showing 31,006,000 board feet of timber. The petition alleged that for the tax years ending June 30, 1971 to 1975, Marion County levied and collected ad valorem property taxes and additional taxes on the timber on the assumption that the 1959 cruise was correct; that petitioner was required to report each year the "areas * * * logged" and that "the amount assumed to have been logged from said logged areas" was then deemed to have been severed for the purposes of the additional taxes and was subtracted from the original 31,006,000 feet for the purposes of ad valorem taxes for the following year.
It was also alleged that a new cruise was made by the Department of Revenue in 1974 showing that not over 18,563,000 board feet of timber had been on the property and that the 1959 cruise was in error. Schedules were attached to the petition showing the amount of overpayment of ad valorem and additional taxes for each of the intervening tax years, totaling $40,505, paid by *962 the taxpayer through what it alleged to be "excusable neglect."
Respondents, after the filing of a demurrer which was overruled, followed by an answer, filed a motion for a separate trial "on the several issues of jurisdiction and authority." An order was then entered by the Tax Court that "all legal issues of jurisdiction, authority and procedural correctness be tried prior to, and apart from the issue of valuation."
At the trial on those issues, petitioner offered testimony to the effect that it did not know until 1974 that the 1959 cruise was in error, so as to enable it to appeal to the Board of Equalization for a refund before the end of each of the intervening tax years. Although it knew at the end of each year that the amount of timber reported to the tax assessor as "severed" did not "coincide" with the cruise amounts, petitioner always had some "hold over amounts" that had been "severed but not removed," making it "very difficult to tell how much there was and where the cutout was." Its testimony was that 1974 was "the first time that (it) was able to compare reports from (its) loggers as to harvest on the one hand with the cruise depletion by area that the Revenue Department was doing" and also that it kept its records on a fiscal year basis, while the state's records were on a calendar year basis, and that "they just give you a lump sum and so you have nothing to tie together." Testimony was also offered that in 1974, after two years of logging, and after selling a portion of the tract, petitioner discovered a "big discrepancy," and then sent its forester "up there looking to see what the problem was" and he discovered "huge piles of cull logs" which were "just wind shook and frost split to the point that they would make nothing but chips." Upon the basis of this evidence petitioner contended that its failure to appeal to the county Board of Equalization before the end of each tax year for the intervening years was "through petitioner's excusable neglect."
Also offered in evidence by petitioner was the following correspondence with the Marion County Board of County Commissioners:
A letter dated July 24, 1975, from petitioner's attorney to the Board of Commissioners enclosing a tax refund claim for $40,505.64 "based upon ORS 311.806"[2] and stating, as the "Legal Basis for Refund":

*963 "The difference between the quantity of timber taxed and the quantity that really was on Petitioner's land in Marion County represents a quantity of timber that simply did not exist within the boundaries of Marion County but was taxed anyway. Petitioner claims that the non-existent timber constituted property not within the jurisdiction of Marion County within the meaning of ORS 311.806(b); that the tax paid on the non-existent timber was paid through excusable neglect under ORS 311.806(c); and that the excess tax should be refunded pursuant to ORS 311.806(1)."
Petitioner did not, however, submit with that letter any statement of facts explaining why it failed to discover the error in the 1959 cruise until 1974 or to otherwise support its contention of "excusable neglect."
A further letter dated October 30, 1975, from petitioner's attorney to the Commissioners, saying that no response to the previous letter had been received and asking that the Board "rule on this claim and advise us."
A letter dated November 1, 1975, from petitioner's attorney to the Commissioners with the following "request":
"* * * that when the time comes for you to consider this matter you give me notice and opportunity to speak to you before you make up your minds.
"I would not need very long, but would appreciate it if you could reserve fifteen minutes for me on your agenda."
Evidence offered by respondents included the minutes of a meeting of the Board of Commissioners on January 7, 1976, which included the following:
"ACTION re TAX REFUND REQUEST OF ROSEBORO LUMBER CO. On October 30, 1975, a letter was received from Richard Bryson, attorney, relative to a tax refund for Roseboro Lumber Company in the total sum of $40,505.64. The letter was referred to Counsel for study and opinion. At this time an opinion was received from Counsel to deny the request.
"MOTION: Commissioner Carson moved the Board approve the recommendation of Counsel and direct him to prepare a letter to Mr. Bryson of the Board's action in denying the tax refund request. Chairman Heine seconded the motion. So ordered."
On August 15, 1978, petitioner filed with the Tax Court a petition for alternative writ of mandamus.
At the conclusion of the trial of those issues, and after receiving and considering briefs from both parties, the Tax Court dismissed this mandamus proceeding "for lack of jurisdiction" by a written opinion upon two grounds:
(1) That petitioner "failed to act with due care in this case" and failed to exhaust its administrative remedies, thus "foreclos(ing) the court's jurisdiction" because "a written appeal must be made (under ORS 309.100) to the county board of equalization for a specific tax year and within that tax year" followed by an appeal (if denied) to the Department of Revenue within 30 days under ORS 305.275 and 305.280 and because "the appraisal of timber for tax purposes is especially difficult because of the overwhelming number of judgmental factors in timber cruising," with the result that "a taxpayer has a duty to make timely inspection of each year's valuation" and may not "take official conclusions as to tax values on faith."
(2) That mandamus was not an available remedy to attack the rejection by the Board of Commissioners of petitioner's claim for a tax refund because ORS 203.200 provides that:
"The decisions of the county court made in the transaction of county business shall be reviewed only upon the writ of review provided by the civil procedure statutes."
and because the rejection of a claim for a tax refund is "county business," despite petitioner's contention to the contrary.
*964 The Tax Court also rejected petitioner's contention that it could not petition for review for the lack of any record, holding that under ORS 34.030 a petition for review could "`describ(e) the decision (or determination) with convenient certainty'" and "set forth the errors alleged to have been committed" in such a manner as to obtain review of petitioner's contentions that either "the commissioners lacked jurisdiction over the assessed property due to its non-existence" or that "the petitioner's tax payments were made through excusable neglect."
In appealing from that decision by the Tax Court, petitioner contends that the Tax Court erred in dismissing the case for lack of jurisdiction because:
(1) ORS 305.410 confers upon the Tax Court general jurisdiction over cases arising under Oregon tax laws.[3] ORS 311.806(1) gives petitioner the right to a tax refund if either the timber upon which petitioner was taxed did not, in fact, exist, so as to be Marion County's taxing jurisdiction or if petitioner acted with "excusable neglect," and that it follows that the Oregon Tax Court had "sole jurisdiction" to "determine whether non-existent timber was within Marion County's tax jurisdiction under ORS 311.806(1)(b)" and "whether taxpayer's neglect was `excusable' under ORS 311.806(1)(c)."[4]
(2) The writ of review was not available in the Tax Court to review the rejection by the Marion County Board of Commissioners of petitioner's tax refund claim because:
(a) The Oregon Tax Court has been granted by amendment to ORS 34.120 power to exercise its jurisdiction by writ of mandamus,[5] but has not been granted power to do so by writ of review.
(b) ORS 203.200, which provides that "the decisions of the county court made in the transaction of county business shall be reviewed only upon the writ of review * * *" and does not apply because tax refunds are not among the items of county business listed in ORS 203.120.
(c) Petitioner was not a party to a "process or proceeding" before the Marion County Board of Commissioners within the meaning of ORS 34.020, the writ of review statute.[6]
Based upon our review and analysis of the record in this case in the light of the contentions of the parties and the cases and authorities cited by them, we conclude that the decisive question in this case is whether writ of review was an available and adequate remedy in this case. If so, that was the exclusive remedy available to petitioner by reason of the express provisions of ORS 203.200, and the Tax Court properly dismissed this alternative writ of mandamus *965 regardless of whether the Tax Court was correct in holding that petitioner failed to properly exhaust its administrative remedies with the Board of Equalization and regardless of whether the Marion County Board of Commissioners properly denied petitioner's tax refund.

1. The writ of review is an available remedy in the Oregon Tax Court.

Petitioner contends that writ of review is not available in the Oregon Tax Court because the specific authorization to that court to issue writs of mandamus by amendment of ORS 34.120, without making any change "that would specifically authorize the tax court to issue a writ of review" is "an indication that the legislature did not intend to add the writ of review jurisdiction to the tax court." Petitioner also contends that "ORS 305.425 requires all proceedings in the Tax Court to be heard de novo" and that "[t]his is totally in conflict with proceedings on writ of review," citing cases holding that on writ of review to a circuit court that court has no power to conduct a trial de novo, but is limited to a review of the record. We disagree.
In 1964 this court, in City of Woodburn v. Domagalla, 238 Or. 401, 395 P.2d 150 (1964), held that the Oregon Tax Court had no power or jurisdiction to issue a writ of mandamus. In so holding this court noted (at 403-05, 395 P.2d 150) that ORS 34.120 then provided that the circuit courts "have exclusive jurisdiction of mandamus proceedings" and that "the jurisdiction of the tax court is nowhere expressly defined."
In 1965 the Oregon Legislature, in direct response to Woodburn, amended ORS 305.405 so as to confer upon the Tax Court "the same powers as a circuit court," including "all ordinary and extraordinary legal, equitable and provisional remedies available in the circuit courts," and also amended ORS 34.120 so as to expressly grant to the Tax Court power to issue writs of mandamus. It did not, however, specifically amend ORS 34.030 so as to expressly grant to the Tax Court the power to issue writs of review.
We recognize that the failure of the legislature to expressly confer upon the Tax Court power to issue writs of review, while expressly conferring upon it the power to issue writs of mandamus, provides the basis for a logical argument that the legislature did not intend to confer power upon that court to issue writs of review. We find, however, upon examination of the legislative history of the 1965 session of the Oregon legislature, that it quite clearly intended to confer the same power upon the Oregon Tax Court to issue all extraordinary remedies as conferred upon circuit courts, including writs of review.
Both the 1965 amendment to ORS 305.405 and the amendment to ORS 34.120 were included in SB 4, "relating to the Oregon Tax Court," which was adopted after hearings before the joint Senate and House Interim Committee on Taxation. The record of the hearings before that committee indicates that this legislation was introduced in direct response to the then recent decision by this court in City of Woodburn v. Domagalla, supra.
On October 10, 1964, Judge Peter Gunnar, the Oregon Tax Court judge whose tax court decision in Woodburn, holding that the Tax Court had all the powers of a circuit court, including mandamus jurisdiction, had been overruled by this court, appeared before the interim committee and gave his explanation of what the proposed amendments would accomplish. The interim committee appeared to fully accept his explanation of and purpose for the new legislation, which was "to create a court that had the powers of a circuit court limited only to the specific fields of taxation which were assigned to that court."
A memorandum for the interim committee explaining the amendments was also prepared by the staff of the Legislative Counsel Committee, stating that although the amendments were specifically designed "to overcome the effect" of the decision by this court in Woodburn, supra, the amendments would also "accomplish * * * other changes" and would "confer upon the tax court all the powers of the circuit court in tax cases within its jurisdiction * *."
*966 In light of this legislative history, we are of the opinion that in 1965 the legislature intended not only to confer upon the Tax Court power to issue writs of mandamus, but also intended to confer upon it all the powers of cirucit courts, including the power to issue writs of review.

2. The "decision" by the Board of Commissioners to reject the tax refund was made in the transaction of "county business."

In 1975 and 1976 ORS 203.200 provided:
"The decisions of the county court made in the transaction of county business shall be reviewed only upon the writ of review provided by the civil procedure statutes."[7]
ORS 203.120 lists 16 items of "county business," none of which specifically include tax refunds.
Petitioner contends that ORS 203.200 and ORS 203.120 must be read together, with the result that "county business" for the purposes of ORS 203.200 must be held to include only those items listed in ORS 203.120 and that ORS 203.200 thus does not apply to this case and does not limit petitioner to the writ of review.
In Russell v. Crook County Court, 75 Or. 168, 145 P. 653, 146 P. 806 (1915), this court considered the question of whether "county business" is limited to those items now listed in ORS 203.120 and held (at 177, 145 P. 653, 146 P. 806):
"It is further contended that this order, not being county business, was beyond the power of the court to make at the instant session, and that the definition of county business in Section 937, L.O.L., is exclusive. While, in our opinion, the conclusion does not necessarily follow from the premises assumed, yet, in the opinion of the writer, county business which is such in fact cannot be constitutionally limited or excluded from the functions of the County Court sitting with a collective membership. The Constitution provides, in effect, as already shown, that three persons may constitute the County Court for the transaction of `county business.' The statute provides for the election of two persons to sit with the county judge in the transaction of `county business.' It is fair to presume that, when the framers of the Constitution used this term, they meant to include all business pertaining to the county as a corporate entity, and, if this be so, it is not in the power of the legislature to limit its meaning by definition."
Petitioner would distinguish Russell as having "no relevance here" because "it concerned an entirely different point, namely, whether the county could be restricted in its activities to the functions listed in ORS 203.120" and that it is "of no help in deciding whether the two statutes * * * should be construed together in deciding what items of county business were referred to in ORS 203.200."
We agree that the two statutes must be read together, and that the term "county business" must be given the same meaning under both statutes. We believe that it follows, however, that just as the question of what is "county business" is not limited by the items listed in ORS 203.120 for purposes of deciding what "business" can be transacted by the county, neither is the meaning of that term for the purposes of ORS 203.200 limited by the items listed in ORS 203.120.
The question remains whether the rejection by the Board of Commissioners of petitioner's tax refund was a "decision" that was "made in the transaction of county business" for the purposes of ORS 203.200. This court recently considered that question, although in a different context, in Strawberry Hill 4-Wheelers v. Benton Co. Bd. of Comm., 287 Or. 591, 601 P.2d 769 (1979). At page 600 this court cited previous decisions in cases involving claims against counties for payment of money, including Crossen v. Wasco County, 10 Or. 111 (1882), in which this court held (at 114) that:
"The `decisions' given or made in the transaction of county business, referred *967 to in section 875, which can only be reexamined by writ of review under the subdivisions of section 870, are judicial in their nature or character, and concern public affairs."
In Strawberry Hill this court went on to say (at 601-2, 601 P.2d 769) in referring to previous cases decided by this court:
"While all their `decisions ... in the transaction of county business' were made reviewable `only upon the writ of review,' see ORS 203.200, the court understood `decisions' to mean what would today be called administrative adjudications, but not `ministerial' actions or the kind of discretionary choices of policy that could be described as `legislative.'"
In our opinion, the denial of a claim for a tax refund is such an "administrative adjudication" as to be properly subject to writ of review under ORS 203.200.

3. This case involves a "process or proceeding" within the meaning of ORS 34.020, the writ of review statute.

ORS 34.020 provides:
"Except for a proceeding resulting in a land use decision as defined in section 3, chapter 772, Oregon Laws 1979, for which review is provided in sections 4 to 6, chapter 772, Oregon Laws 1979, any party to any process or proceeding before or by any inferior court, officer, or tribunal may have the decision or determination thereof reviewed for errors, as provided in ORS 34.010 to 34.100, and not otherwise. * * *" (Emphasis added)
Petitioner contends that it was not a party to a "process or proceeding" within the meaning of that statute; that there is no provision for the Board of Commissioners to hold a formal hearing on requests for tax refunds and that there was no record of a proceeding to be reviewed.[8]
In our opinion, these contentions by the petitioner confuse two separate questions: (1) whether writ of review was not "available" as a remedy, so as to make mandamus an appropriate remedy, and (2) whether writ of review was not an "adequate" remedy in this case, so as to make mandamus an appropriate remedy.
A writ of review is an "available" remedy under ORS 203.200 when it involves a "decision" by a county Board of Commissioners "made in the transaction of county business." As previously held, the denial by respondents of petitioner's claim for a tax refund was a "decision" made "in the transaction of county business" within the meaning of ORS 203.200. It follows that a writ of review was available as a remedy to the petitioner in this case.
If, however, a writ of review, even though an "available remedy," would not have provided an adequate remedy to the petitioner, it might be contended that petitioner was entitled to a remedy by writ of mandamus. See Mt. Hood Stages v. Haley, 253 Or. 28, 37-39, 445 P.2d 878, 453 P.2d 435 (1969), and State ex rel. Ricco v. Biggs, 198 Or. 413, 425, 255 P.2d 1055 (1953).
ORS 34.110 provides in part:
"* * * The writ shall not be issued in any case where there is a plain, speedy and adequate remedy in the ordinary course of the law."
If the petitioner in this case had requested a hearing before the Board of Commissioners for the purpose of offering evidence, such as upon the question of excusable neglect, and if it had requested the Board to then make a "finding" upon the basis of such evidence, such a request, if refused, might have provided a proper basis for a contention that a writ of review was not an adequate remedy and that petitioner was entitled to a writ of mandamus ordering the county commissioners to hold such a hearing, to receive and consider such evidence, and to make such a finding.
In this case, however, petitioner made no such request, but instead demanded that the Board of Commissioners rule that as a matter of law it was entitled to a tax *968 refund. Having made its request for a tax refund on that basis, we are of the opinion that a writ of review provided an adequate remedy for review of the decision by respondents upon the request made by petitioner, i.e., that it rule as a matter of law whether petitioner was entitled to a tax refund on the basis of the claim submitted by petitioner. Having failed to apply to the Tax Court for a writ of review within 60 days of the rejection of its claim by respondents on January 7, 1976, as required by ORS 34.030,[9] petitioner is not now entitled to relief by writ of mandamus. See McAlmond v. Myers, 262 Or. 521, 526, 500 P.2d 457 (1972).[10] It follows that the Tax Court did not err in dismissing this proceeding.
Affirmed.[11]
NOTES
[*] Denecke, C.J., and Tanzer, J., did not participate in the decision of this case.
[1] ORS 305.445 provides for direct appeals to this court from decisions by the Oregon Tax Court.
[2] ORS 311.806 provides:

"(1) The county governing body shall refund to a taxpayer, out of the general fund or the unsegregated tax collections account provided in ORS 311.385, taxes collected by an assessor or tax collector pursuant to a levy of the assessor or of any taxing district or tax levying body plus interest thereon as provided in ORS 311.812, in the following cases:
"(a) Whenever ordered by the Department of Revenue and no appeal is taken or can be taken from the department's order, or whenever ordered by the Oregon Tax Court or the Supreme court and the order constitutes a final determination of the matter; or
"(b) Whenever taxes are collected against real or personal property not within the jurisdiction of the tax levying body; or
"(c) Whenever any person, through excusable neglect, or through an error subject to correction under ORS 311.205 pays taxes on property in excess of the amount legally chargeable thereon, and then only in the amount of money collected in excess of the amount actually due; or
"(d) Except as provided in ORS 311.803, whenever any person pays taxes on the property of another by mistake of any kind.
"(2) No such refund shall be allowed or made after six years from the assessment date for the fiscal year for which the taxes were collected unless before the expiration of such period a written claim for refund of the collection is filed by the taxpayer with the county governing body. Where applicable, a certified copy of the order of the Department of Revenue or of the Oregon Tax Court or the Supreme Court shall be made a part of the claim. However, upon written request of the Director of the Department of Revenue or with the approval of the tax collector, the county governing body may order a refund of taxes paid to any taxpayer or class of taxpayers without the filing of a written claim. The request of the department shall be considered an order for the purpose of paragraph (b) of subsection (2) of ORS 311.812.
"(3) Immediately upon payment of the refund and any interest thereon, the tax collector shall make the necessary correcting entries in the records of his office, and if the refund is made from the general fund, the county treasurer shall reimburse the general fund in the amount of the refunded tax and any interest paid thereon, from the unsegregated tax collections account provided in ORS 311.385. ORS 294.305 to 294.520 shall not apply to refunds made out of the unsegregated tax collections account."
[3] ORS 305.410(1) provides:

"(1) Subject only to the provisions of ORS 305.445 relating to judicial review by the Supreme Court and to subsection (2) of this section, the tax court shall be the sole, exclusive and final judicial authority for the hearing and determination of all questions of law and fact arising under the tax laws of this state. * * *"
[4] See footnote 2, supra.
[5] ORS 34.120 provides:

"The circuit court or judge thereof of the county wherein the defendant, if a public officer or body, exercises his or its functions, or if a private person or corporation, wherein such person resides or may be found, or such private corporation might be sued in an action, shall have exclusive jurisdiction of mandamus proceedings, except that the Oregon Tax Court or judge thereof shall have jurisdiction in mandamus proceedings in all cases involving tax laws as defined in ORS 305.410, * * *." (Emphasis added)
[6] ORS 34.020 provides:

"Except for a proceeding resulting in a land use decision as defined in section 3, chapter 772, Oregon Laws 1979, for which review is provided in sections 4 to 6, chapter 772, Oregon Laws 1979, any party to any process or proceeding before or by any inferior court, officer, or tribunal may have the decision or determination thereof reviewed for errors, as provided in ORS 34.010 to 34.100, and not otherwise. Upon a review, the court may review any intermediate order involving the merits and necessarily affecting the decision or determination sought to be reviewed."
[7] ORS 203.200 was repealed by 1979 c. 772 § 17.
[8] Petitioner also contends that if a claim for a tax refund to a Board of County Commissioners is subject to writ of review, it would follow that every person with a damage claim or every workman whose claim is rejected would have to go to writ of review instead of filing suit in court, as is the present practice.
[9] ORS 34.030 provides:

"* * * A writ shall not be allowed unless the petition therefor is made within 60 days from the date of the decision or determination sought to be reviewed."
[10] We also disagree with petitioner's contention that by our holding that writ of review was an adequate remedy in this case, persons with damage or wage claims against a county that are rejected will be confined to the remedy of writ of review and will not be able to file suit in district or circuit court. Most damage and some wage claims are not available to persons based upon specific statutory provisions, as are claims for tax refunds under ORS 311.806, but have an independent basis in tort and contract law.
[11] It should be noted that we do not affirm the dismissal of this case solely "for lack of jurisdiction," as stated by the order of the Tax Court. ORS 34.120 provides that "the Oregon Tax Court * * * shall have jurisdiction in mandamus proceedings in all cases involving tax laws as defined in ORS 305.410." Instead, we affirm the Tax Court's dismissal of the case because petitioner's proper and exclusive remedy was by writ of review.