Argued and submitted April 20, affirmed in part; reversed
in part and remanded with instructions July 6,
reconsideration denied August 20,
petition for review allowed October 6, 1981 (291 Or 708)

# VALSETZ SCHOOL DISTRICT NO. 62,
## *Appellant - Cross-Respondent,*
### *v.*
# POLK COUNTY,
## *Respondent - Cross-Appellant.*
## (No. 25601, CA 17740)

630 P2d 1318

Gerald C. Doblie, Portland, argued the cause for appellant - cross-respondent. On the briefs were Elizabeth Welch and Doblie, Francesconi & Welch, P. C., Portland.

I. Franklin Hunsaker, Portland, argued the cause for respondent - cross-appellant. With him on the briefs were Dennis McCaffrey, Polk County Legal Counsel, Dallas, R. R. Bullivant, John W. Buehler, and Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Plaintiff school district brought this action for money had and received against defendant county arising from the manner in which the county distributed timber revenues it received in the years 1971 through 1979 from the State Board of Forestry. The money was generated by sales of timber from lands located within the school district. The trial court granted "summary judgment of dismissal" in favor of defendant on the ground that plaintiff's exclusive remedy is through writ of review. The court further concluded, however, that plaintiff must be allowed to present its claim to the county and obtain an order which could be reviewed, and it therefore ordered the dismissal without prejudice to plaintiff's right to present the claim to the county. Both parties appeal from that judgment.[1]

Certain forest lands located within the school district were conveyed by the county to the state between 1942 and 1964 pursuant to what is now ORS 530.030, which provides in part:

"The county court or board of county commissioners of any county may convey to the state for state forests any lands heretofore or hereafter acquired by such county through foreclosure of tax liens, or otherwise, * * * in consideration of the payment to such county of the percentage of revenue derived from such lands as provided in ORS 530.110."[2]

ORS 530.110 establishes a distribution scheme whereby a certain percentage of the revenues derived from such property is retained by the state and a certain percentage distributed to the counties in which the lands are located. ORS 530.115(1) then directs distribution of the funds received by the counties as follows:

---

[1] Plaintiff also appeals from the denial of its motion for summary judgment. Because of our disposition of this case, we do not reach that issue. However, we would point out that denial of a motion for summary judgment is not normally appealable. *See Polsfoot v. Transamerica Title,* 47 Or App 261, 614 P2d 1173 (1980); *but see, Hanneman v. Jones,* 45 Or App 1005, 1010, 609 P2d 912 (1980).

[2] We cite the current statutes for convenience. Any differences from the previously applicable statutes do not affect our decision. *See also* Attorney General Opinion No. 7853, February 19, 1980 (indicating that current law would apply in any event).

"Money received under this subsection by the county shall be applied in the following order:

"(a)   The county general fund shall be reimbursed for all costs and expenses incurred by the county in the maintenance and supervision of such lands and in any suits by it to quiet title to lands conveyed to the state; provided that the proceeds so applied shall not be less than 10 percent of the total proceeds received.

"(b)   Twenty-five percent of the remainder of the money shall be credited and paid into the county school fund created under ORS 328.005.

"(c)   The remainder of the money shall be by the county prorated and apportioned to the various taxing districts in which the lands are situated in the proportion that the rate of tax levy in each district as shown by the tax levy filed with the assessor for the last year in process of collection, bears to the total rate of tax levy of all such taxing bodies for such year."[3]

The Board of County Commissioners issued orders in each of the years 1971 through 1977 which recited that it appeared to the Board "after considering certain facts" that a specified percentage of the revenues in the county Land Sales Fund[4] should be transferred to the county General Fund "* * * covering costs incurred prior to the distribution to the taxing districts pro-rated according to law * * *." The 1979 order was similar, although slightly more detailed.[5] Following the deduction so authorized, the balance of the timber revenues was distributed. The school district was informed, usually by telephone, in each of the years in question of the amount it would receive in timber revenues.

The parties are in agreement as to the amount of state forest revenues received during each year in question by the county which were attributable to state forest lands

---

[3] Subsection (b) was added in Or Laws 1977, ch 840, § 17.

[4] The state forest revenues may have been placed in the county Land Sales Fund because earlier versions of ORS ch 530 had directed that the revenues be distributed by the counties as they would have been "had the lands from which the revenues are derived been sold by the county." Or Laws 1957, ch 83, § 14.

[5] The record does not contain an order for the year 1978. However, the school district indicates by affidavit that the Board of County Commissioners determined that a certain percentage of state timber revenues received by it in 1978 would be retained and the remainder distributed to the taxing districts.

located within the school district. They also agree on the amount the school district actually received from the county each year. Plaintiff's complaint alleges that the county did not distribute the state forest revenues it received in the years 1971 through 1979 in accordance with the statutory requirements. Specifically, it alleges that the county retained an excessive amount as reimbursement for its costs and expenses in maintaining the forest lands. It seeks to recover the sums to which it alleges it is entitled pursuant to the statutory scheme.

The trial court granted the county's motion for summary judgment on the ground that the school district's exclusive remedy is by way of writ of review. However, it specifically granted the motion without prejudice to the school district's right to seek recovery of the funds in another proceeding.

Plaintiff appeals, contending that the acts of the county in distributing the timber revenues were ministerial in nature and that a writ of review is not an appropriate remedy for review of ministerial acts. The county cross-appeals, arguing that writ of review is the exclusive remedy by which the school district could seek review of the county's distributions but that the trial court erred in ruling that the school district could now seek a determination by the county and then seek review of that determination, if necessary, by writ of review.

At all pertinent times, former ORS 203.200 provided:[6]

"The decisions of the county court made in the transaction of county business shall be reviewed only upon the writ of review provided by the civil procedure statutes."[7]

One aspect of "county business" was "the general care and management of county property, funds and business, where the law does not otherwise expressly provide." Former ORS 203.120. In *Strawberry Hill 4-Wheelers v. Benton Co. Bd. of Comm.,* 287 Or 591, 601 P2d 769 (1979), the Supreme Court

---

[6] ORS 203.200 was repealed by Or Laws 1979, ch 772, § 17, effective November 1, 1979. The last order at issue here was issued June 20, 1979.

[7] Pursuant to ORS 203.240 the County Board of Commissioners has the powers of a county court.

reviewed the history of the writ of review and "county business" and concluded, in part, that "* * * decisions * * * in the transaction of county business" made reviewable exclusively by writ of review are "* * * what would today be called administrative adjudications, but not 'ministerial' actions or the kind of discretionary choices of policy that could be described as 'legislative'." 287 Or at 602; and *see* Johnston, *The Writ of Review in Oregon,* 13 Will L J 417, 424-26 (1977).

Both parties rely upon the distinction between *Oregon City v. Clackamas Co.,* 32 Or 491, 52 P 310 (1898) *(Oregon City I),* and *Oregon City v. Clackamas County,* 118 Or 546, 247 P 772 (1926) *(Oregon City II),* noted in *Strawberry Hill 4-Wheelers, supra,* in support of their positions. In *Oregon City I,* the county was required to apportion county road taxes among the road districts "having due regard to the amount of taxes collected in the several road districts, to the condition of the roads, and necessity for repairs, and to the amount of travel thereon." Writ of review was held to be the proper remedy. As explained in *Oregon City II,* the application of the statute "required an investigation and inquiry, the exercise of discretion and judgment which was properly held to be the exercise of judicial functions." 118 Or at 553.

By the time of the later case, the statute had been changed to require distribution of road funds "* * * in such proportion as the amount of taxable property in each district shall bear to the whole amount of taxable property in the county * * *." In holding that a writ of review was *not* an available remedy in that later case, the court noted:

"The statute defines specifically what shall be done by the County Court in making the apportionment. No discretion in making the apportionment is left to the County Court. No inquiry is to be made nor is any judgment to be exercised by that court. Its sole duty is confined to ascertaining by computation the amount of taxes which is to be apportioned to the several road districts * * *. The County Court is not called upon, therefore, to exercise any judicial function in making the apportionment of taxes properly allowable to the city road districts." 118 Or at 552-53.

The actions of the county court in *Oregon City II* appear to have been the kind of ministerial acts described in *Hodgdon v. Goodspeed,* 60 Or 1, 5, 118 P 167 (1911):

"A ministerial act consists in the discharge of some duty enjoined by law upon one or more persons, who, in obeying the rule prescribed, exercise no judgment or discretion regarding the matter."

We find that the statute which provides for distribution of the state forest revenues by the county is like that which was applied in *Oregon City I.* Although the distribution to the various taxing districts is to be proportional, the initial step by which the county determines what portion of the revenues will go to reimburse the County General Fund requires more than a mathematical computation. The county is required to examine and allocate the expenses it incurred during the year which are attributable to maintenance and supervision of the state forest lands within the county.[8] That determination involves the exercise of judgment and discretion by the Board of County Commissioners and is the transaction of county business which is reviewable by writ of review pursuant to ORS 203.200.[9]

The school district contends that, even if the writ of review was an available remedy, it was not an adequate remedy here. *See Rosboro Lumber Co. v. Heine,* 289 Or 899, 618 P2d 960 (1980). Two bases for this alleged inadequacy are suggested. First, the school district points out that a writ of review contemplates a record of proceedings held before an inferior tribunal which may be reviewed by the circuit court. ORS 34.060; *and see, Brooks v. Dierker,* 275 Or 619, 625, 552 P2d 533 (1976). The school district contends that there is no record to be reviewed here but only the orders issued by the county each year.

We conclude, however, that the school district had an adequate remedy in the writ of review. At the time the distributions were made in 1971, 1972 and 1973, ORS

---

[8] The county has indicated that it considers such items as road maintenance, police and fire protection, planning and general administrative services as appropriately allocated under ORS 530.115(1)(a). We are not now called upon to decide which expenses the county may consider or how much of such expenses should be allocated.

[9] ORS 530.115 provides a 10 percent minimum which the county could have chosen to apply. The percentages retained in each of the years at issue here were significantly higher than 10 percent and it is clear that the county did not rely upon the statutory minimum.

34.040 required that a writ be allowed where an inferior tribunal

"[i]n the exercise of judicial functions appears to have exercised such functions erroneously or arbitrarily, or to have exceeded its or his [sic] jurisdiction * * *."

The use of the term "arbitrarily" was meant to require that the decisions of inferior tribunals be supported by substantial evidence. *Western Amusement v. Springfield,* 274 Or 37, 545 P2d 592 (1976). In 1973, ORS 34.040 was amended to make that requirement explicit.[10] The statute then provided for issuance of a writ when it appeared that an inferior tribunal

"* * * [m]ade a finding or order not supported by reliable, probative and substantial evidence * * *."

The statute remained unchanged during the times relevant to this case.[11] It seems clear that if the orders of the Board of County Commissioners were supported by no evidence whatever, as the school district now charges, the school district could have obtained a writ of review on that basis.

Pursuant to ORS 34.030:

"A writ [of review] shall not be allowed unless the petition therefor is made within 60 days from the date of the decision or determination sought to be reviewed."

The trial court concluded that there had not yet been a "decision or determination" by the county which could be reviewed, and ordered that the school district now be given the opportunity to obtain such a decision or determination. The basis of that conclusion seems to be that the school district was given neither notice of nor an opportunity to participate in whatever proceedings preceeded the issuance of the county's orders and the distribution of funds each year. This is the second basis upon which the school district contends that the writ of review is an inadequate remedy here.

■    Although it may have been improper for the county to fail to notify the school district *before* it determined the amount of state forest revenues to be distributed, the school

---

[10] Or Laws 1973, ch 561, § 1.

[11] ORS 34.040 was later amended by Or Laws 1979, ch 772, § 13, effective November 1, 1979.

district was informed each year that the county had determined the amount the school district would receive and those funds were then made available to the school district. The district was at that time put on notice that the county had made a determination of the amount it would retain to reimburse the county General Fund pursuant to the statutory scheme. Therefore, even if the 60 day period for petitioning for a writ of review did not begin to run until the school district was aware, or had reason to be aware, that a determination had been made by the county, *see Emerson v. Deschutes Cty Bd of Comm'rs,* 46 Or App 247, 610 P2d 1259 (1980), that 60 day period is now over for each of the years for which the school district seeks recovery.

We conclude that plaintiff had an available and adequate remedy in the writ of review and that the writ was plaintiff's exclusive remedy for review of the county's actions. Plaintiff failed to pursue that remedy within the time period allowed by statute and is now precluded from seeking review by that or any other proceeding.

Affirmed in part, reversed in part and remanded with instructions to modify the judgment in accordance with this opinion.