Argued and submitted March 31, affirmed May 12,
reconsideration denied June 24,
petition for review denied August 3, 1982 (293 Or 456)

LANE COUNTY,
*Appellant,*
*v.*

PAULUS,
*Respondent.*

GRANT COUNTY,
*Intervenor,*
*v.*

PAULUS,
*Defendant.*

(No. 126966, CA A21806)

644 P2d 616

Paul R. Romain, Portland, argued the cause for appellant. On the briefs were Teresa J. Wilson, Assistant County Counsel, Lane County Office of Legal Counsel, Eugene, Richard D. Roberts, and Ragen, Roberts, O'Scannlain, Robertson & Neill, Portland.

Peter S. Herman, Senior Counsel, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Stuart M. Brown, and Young, Horn, Cass & Scott, Eugene, filed a brief amicus curiae for Associated General Contractors.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

### RICHARDSON, P. J.

This is a declaratory judgment action in which plaintiff Lane County contends that it has statutory discretion to commingle federal forest revenues in the county road fund with other county monies for the purpose of investment and to credit all the interest earned from the commingled investments to the county's general fund. *See* 16 USCA § 500; ORS 293.560; ORS 294.060(1). Defendant Secretary of State argues that the county is required generally to invest unexpended road fund monies—including the forest revenues—for the benefit of the road fund and that only the "residual" amounts from the fund which are held to pay current obligations may be invested with other county monies to benefit the general fund. The trial court agreed with defendant, and the county appeals. We affirm.

ORS 294.060(1) provides:

"The moneys received by each county under ORS 293.560 shall be divided 75 percent to the road fund and 25 percent to the school fund of the county and, subject to subsections (2) and (3) of this section, the moneys shall be expended as other moneys in those funds are expended."

ORS 294.080(1) provides:

"Except as provided in subsections (2) and (3) of this section, the county treasurer shall credit to the general fund of the county all interest received from any investment made from the general cash balance of any funds in the hands of the county treasurer. If the entire investment is made from a specific fund, however, the treasurer shall credit the interest to the fund from which the investment was made."

The county argues that ORS 294.060(1) does not govern allocation of interest from investments of forest revenue and that ORS 294.080(1) is the controlling statute.[1] The county interprets ORS 294.080(1) to mean, essentially, that counties have complete discretion over which of two approaches to follow in investing specific county funds and the crediting of interest. The county contends that it may make segregated investments from a specific fund, like

---

[1] The parties appear to agree that no federal statute governs the allocation of interest. *See* 42 USCA § 4213; *Tree Farmers, Inc. v. Goeckner,* 86 Idaho 290, 385 P2d 649 (1963).

the road fund, in which case interest must be credited to that fund; or it may commingle monies from different funds for investment, in which case the interest must be credited to the general fund.[2] Defendant argues that the county is mistaken for two reasons: first, because "ORS 294.060(1) makes a clear dedication of federal forest receipts to county road fund purposes" by requiring the forest revenue to "be expended as other moneys in [the road fund] are expended"; and, second, because ORS 294.080(1) does not give counties authority to invest the entire unexpended principal of special funds for the benefit of the general fund.

■     The parties' disagreement about the meaning of ORS 294.080(1) centers on the words "general cash balance" in the statute. The county understands those words to refer to the entire amount in a fund that is available for investment. Defendant reads the words much more narrowly and understands "general cash balance" to include only the residual amounts from special funds which the county treasurer has on hand to meet current demand obligations.[3] According to defendant, ORS 294.080(1) requires

> "* * * any unobligated road funds to be invested for the benefit of the County Road Fund and interest earnings thereon credited to the road fund.
>
> "Once the County Road Fund has been obligated for road fund purposes, or has been invested for the benefit of the road fund, any remaining cash balances maintained on hand to meet current obligations, * * * may be commingled with the County General Fund for investment purposes. Any resulting interest earnings on any non-constitutionally

---

[2] Our description of the county's argument simplifies it. The county recognizes that the interest earned on constitutionally dedicated funds generally must be credited to those funds, *see State ex rel Sprague v. Straub*, 240 Or 272, 400 P2d 229, 401 P2d 29 (1965), and that the legislature has the power to require interest generated by specific funds to be attributed to them even in commingled investment situations. However, it is the county's contention that, where there is no such specific legislative or constitutional direction, ORS 294.080(1) gives counties the options described in the text.

[3] In support of their interpretations of the phrase "general cash balance," the parties rely largely on dictionary or legal encyclopedia definitions of the individual words comprising the phrase and of related words. We note that the terms "cash balance" and "cash balances" appear in the Local Budget Law. *See* ORS 294.361(2) and 294.460(2). However, we are satisfied that those words in the budget law do not control the term "general cash balance" in ORS 294.080(1).

dedicated portion of such residual cash balances may * * *
be credited to the County General Fund."

We find defendant's interpretation of ORS
294.080(1) to be more persuasive than the county's. The
county understands the statute to give counties unrestricted
authority to decide whether special funds will be segregated
or commingled with other county revenue for investment;
once that decision is made, however, the interest on com-
mingled investments must be credited to the general fund,
and all interest on segregated investments must be credited
to the specific funds from which they are made. It is, of
course, true that the legislature may enact a statute that
has the dual objectives of defining a public body's authority
to commingle funds for investment and of regulating the
allocation of the investment income among the funds. But
the legislature cannot enact a statute—or at least we can-
not ascribe to it the intent to do so—under which the
methods of achieving the two objectives nullify one another.
The legislature could not have intended to provide in the
same statute, first, that interest on segregated investments
of specific funds *must* be credited to those funds and,
second, that counties may divert *all* interest on their invest-
ments to the general fund by *choosing* to commingle funds
for investment. The legislature could not have meant both
to limit the counties' discretion over interest allocation and
to give them what is, in reality, uncontrolled discretion over
which funds will receive interest. Conversely, there is no
internal inconsistency in defendant's interpretation of the
statute, and that interpretation also gives effect to the
statute's apparent objectives of protecting the integrity of
special funds and giving counties the necessary latitude to
make commingled investments of monies which cannot be
readily identified or segregated by fund. We agree with
defendant's interpretation of ORS 294.080(1).[4]

---

[4] The county and the amicus direct our attention to certain legislative history.
That history lends support to defendant's interpretation of ORS 294.080(1). For
example, the minutes of the House Committee on Local Government for April 3,
1963, quoted by the amicus, state:

"There is, of course, no problem with regard to the interest earnings when
an investment is made in whole from a specific identifiable fund. The interest
follows the principal.

■ The county argues that this case is controlled by *State ex rel Sprague v. Straub,* 240 Or 272, 400 P2d 229, 401 P2d 29 (1965). The Supreme Court held there that the State Treasurer was affirmatively required by statute to credit certain interest to the state general fund. *Sprague* is relevant to this case only if ORS 294.080(1), like the statute considered in *Sprague,* contains an affirmative direction to credit the interest in question to the general fund. It is true that ORS 294.080(1) directs the county treasurer to "credit to the general fund of the county all interest received from any investment made from the general cash balance of any funds in the hands" of the treasurer. For the reasons discussed above, however, it is not correct that counties have general authority under ORS 294.080(1) to include special fund monies, other than residual cash, in their investment of the "general cash balance." *Sprague* is not apposite.

In light of our interpretation of ORS 294.080(1), it is unnecssary for us to consider whether, as defendant argues, ORS 294.060(1) constitutes a dedication of federal forest receipts to road and school purposes and therefore precludes their investment for the benefit of the general fund.[5]

Affirmed.[6]

---

"But when investments are made from a general pool of monies comprised of many and various funds flowing in and out of the pool, remaining therein for different lengths of time and in differing proportions, it becomes an obvious impossibility to determine what part of which fund was invested for how long and at what rate of interest. This is the case as regards investments made from the county treasurer's total general cash balance which is comprised of the residual balances of all funds and accounts held by the county treasurer and all of which are subject to demand pay-out."

[5] The county argues that ORS 294.060(1) limits only the *expenditure* of federal forest revenue and has no bearing on its *investment. Cf. Urban Renewal v. Swank,* 54 Or App 591, 599-601, 635 P2d 1344 (1981), *rev den* 292 Or 450 (1982) (differentiating between the use and investment of certain school district monies in the county treasurer's custody). As noted earlier, defendant contends that ORS 294.060(1) "makes a clear dedication of federal forest receipts to county road fund purposes," by requiring that they be "expended as other moneys in [the county road fund] are expended." If defendant is correct in her understanding that that language pertains to the investment of federal forest revenue, it would be at least questionable whether even residual cash balances derived from federal forest monies could be commingled with other county revenue for investment and the interest credited to the general fund.

[6] Our decision relates only to the crediting of interest. It is unnecessary to consider in this case whether particular methods of investment are permissible.