Argued and submitted August 5, affirmed in part; reversed and remanded with instructions in part December 21, 1983, reconsideration denied February 10, petition for review denied April 17, 1984 (296 Or 829)

# STATE ex rel COLUMBIA COUNTY SCHOOL DISTRICT NO. 13 et al,
## *Respondents,*

*v.*

# COLUMBIA COUNTY et al,
## *Appellants.*

### (27649; CA A26424)

674 P2d 608

Michael Jay Rune, Portland, argued the cause for appellants. With him on the brief was Spies and Rune, P.C., Portland.

Richard F. Deich, Portland, argued the cause for respondent Columbia County School District No. 13. With him on the brief was Deich, Deich and Hinton, Portland.

Harold L. Olsen, St. Helens, argued the cause for respondents Clatskanie-Knappa School District No. 5-J, Scappoose School District No. 1-J, St. Helens Rural Fire Protection District, and St. Helens School District No. 502. With him on the brief was Olsen & Smith, St. Helens.

Lawrence S. Shaw, City Attorney, St. Helens, joined in the briefs of respondents.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This is a declaratory judgment action with alternative petitions for writ of mandamus and writ of review. Defendants appeal from a trial court judgment for plaintiffs holding that plaintiffs were entitled to receive annually the accrued *interest* on mineral lease income received by defendants.

The essential facts are undisputed. Beginning in the 1930s, Columbia County foreclosed numerous delinquent tax liens. It subsequently sold the foreclosed lands, reserving the mineral rights. Beginning in 1975, the county entered into oil and gas leases involving the reserved mineral rights. Income from the leases was deposited in the county general fund and was invested by the county treasurer. At the maturity of each investment, the principal and the earned interest would either be placed in the county's checking account or reinvested.

The interest earned on these mineral lease income investments was credited to the general fund. The decision to add the interest to the general fund has been affirmed by the county commissioners each year on the dates of distribution of the principal.

The county treasurer maintains an accounting system sufficient to calculate the amount of interest earned from the investment of the proceeds from the sale and lease of tax-foreclosed lands and mineral rights. The amount of interest is entered on an accounting sheet and is identifiable. The mineral lease income, but not the interest earned thereon, is disbursed periodically to certain statutorily designated taxing districts.

In 1981, plaintiff Columbia County School District #13 (Rainier) filed a complaint for declaratory judgment and a petition for alternative writ of mandamus, seeking a declaration that it was entitled to a pro-rata share of interest earned on the mineral revenues for fiscal year 1980-81 and subsequent years. Rainier amended its complaint to include a petition for a writ of review. All other taxing districts in the county were named as opposite parties in the petition. The order for writ of review issued and was served on the county, county commissioners, treasurer and clerk. Defendants

county, commissioners and treasurer answered, and defendants commissioners and treasurer moved to dismiss, for summary judgment and to dismiss improperly joined parties. Nineteen of the named defendants accepted service of the complaint, amended complaint, alternative writ of mandamus and writ of review. Fifteen of the named defendants were not served and did not appear. In January, 1982, the City of St. Helens was made a co-plaintiff. St. Helens School District No. 502, St. Helens Rural Fire Protection District and Clatskanie-Knappa School District No. 5-J were dismissed as defendants and added as plaintiffs. The other defendants, except appellants, were dismissed. Although no order was entered, after a pretrial conference, the trial court removed the defenses of estoppel and waiver from the case, as well as plaintiff's petition for a writ of mandamus and its claim for attorney fees.

Defendants first assign as error the trial court's finding that declaratory relief is the proper remedy. They maintain that a writ of review is the exclusive method of review. *Former* ORS 203.113 provided:[1]

> "Except for a proceeding resulting in a land use decision * * * the decisions of a county court made in the transaction of county business shall be reviewed only as provided in ORS 34.010 to 34.100 and not otherwise."

ORS 34.040 essentially provides that a writ of review shall be allowed when

> "* * * the inferior court including a district court, officer, or tribunal other than an agency as defined in ORS 183.310(1) in the exercise of judicial or quasi-judicial functions appears to have:
>
> "(1)  Exceeded its jurisdiction;
>
> "(2)  Failed to follow the procedure applicable to the matter before it;
>
> "(3)  Made a finding or order not supported by substantial evidence in the whole record;
>
> "(4)  Improperly construed the applicable law; or
>
> "(5)  Rendered a decision that is unconstitutional. * * *"

---

[1] ORS 203.113 was amended by Or Laws 1983, ch 827, § 46, in ways not material to our disposition here.

■      Whether county business is reviewable exclusively by writ of review depends on the nature of the action. A writ of review is available when the action under scrutiny is judicial or quasi-judicial. *Hodgdon v. Goodspeed,* 60 Or 1, 5, 118 P 167 (1911); *see Oregon City v. Clackamas County, et al.,* 118 Or 546, 551, 247 P 772 (1926). The question here is whether the act of retaining the interest on mineral lease income was judicial, quasi-judicial, legislative or ministerial.

The management of county lands and resources is governed by ORS chapter 275. Counties may lease lands acquired by foreclosure. ORS 275.090. The procedure to be followed in distributing the proceeds from leases is found in *former* ORS 275.275:[2]

"(1)   The proceeds arising under ORS 275.090 to 275.310 first shall be applied to refund the county general fund for the full amount advanced by the county to pay the state tax upon all properties upon which the county has foreclosed liens for delinquent taxes, and second, shall be applied to refund the county general fund for all the costs and expenses incurred by the county in the maintenance and supervision of such properties and in any suits by it to quiet its title to property sold; provided, that the proceeds so applied as refunds shall not amount to less than 10 percent of the total proceeds.

"(2)   The balance of said proceeds, including the payments for land sold under contract pursuant to ORS 275.190 to 275.200 shall be distributed by the county treasurer in accordance with an order of the county court in accordance with the formula provided in ORS 311.390 which is currently being used for the distribution of tax collections."

Defendants contend that the commissioners' decision to retain interest was "county business" of the nature referred to in ORS 203.113 and, thus, is reviewable exclusively by writ of review. We disagree. *See Caffey v. Lane County,* 65 Or App 470, 671 P2d 727 (1983).

In *Strawberry Hill 4-Wheelers v. Benton County Board of Commissions,* 287 Or 591, 601 P2d 769 (1979), the Supreme Court formulated a three-pronged test to aid in

---

[2] ORS 275.275 was amended by Or Laws 1983, ch 537, § 5. It now provides for segregation of proceeds received by counties from the sale or lease of mineral rights and limits the counties' right of reimbursement to 10 percent of such proceeds annually.

determining whether county action is quasi-judicial: (1) whether the process is bound to result in a decision; (2) whether the decision is bound to apply pre-existing criteria to concrete facts; and (3) whether the action is directed at a closely circumscribed factual situation or a relatively small number of persons. 287 Or at 602; *see also Lane v. City of Prineville,* 49 Or App 385, 619 P2d 940 (1980).

In *Valsetz School District No. 62 v. Polk County,* 53 Or App 18, 630 P2d 1318 (1981), *aff'd* 292 Or 385, 638 P2d 1148 (1982), we applied the *Strawberry Hill* analysis to a statutory distribution scheme similar to *former* ORS 275.275.[3] There, the issue was whether the county's initial determination of the allocation of expenses incurred in the maintenance and supervision of state forest lands was a quasi-judicial act. We concluded that that initial determination is quasi-judicial and, thus, is reviewable exclusively by writ of review. The portion of the statute directly at issue in *Valsetz,* ORS 530.115(1)(a), contains provisions for reimbursement to the county for having maintained and supervised state lands, including the county's duty to file and defend quiet title actions. Evidence was introduced in *Valsetz* that the county had considered such items as road maintenance, police and fire protection, planning and general administrative services as appropriately allocated for reimbursement. 53 Or App at 24 n 8. We discussed the provisions of a statute containing language analogous to the apportionment provisions in *former* ORS 275.275(2) at issue here:

"Both parties rely upon the distinction between *Oregon City v. Clackamas Co.,* 32 Or 491, 52 P 310 (1898) *(Oregon City*

---

[3] ORS 530.115, the statute in *Valsetz,* controls the distribution of timber revenues acquired by counties from the State Board of Forestry. ORS 530.115(1) provides, in pertinent part:

"(a) The county general fund shall be reimbursed for all costs and expenses incurred by the county in the maintenance and supervision of such lands and in any suits by it to quiet its title to lands conveyed to the state; provided that the proceeds so applied shall not be less than 10 percent of the total proceeds received.

"* * * * *

"(c) The remainder of the money shall be by the county prorated and apportioned to the various taxing districts in which the lands are situated in the proportion that the rate of tax levy in each district as shown by the tax levy filed with the assessor for the last year in process of collection, bears to the total rate of tax levy of all such taxing bodies for such year."

*I)* and *Oregon City v. Clackamas County,* 118 Or 546, 247 P 772 (1926) *(Oregon City II),* noted in *Strawberry Hill 4-Wheelers, supra,* in support of their positions. In *Oregon City I,* the county was required to apportion county road taxes among the road districts having due regard to the amount of taxes collected in the several road districts, to the condition of the roads, and necessity for repairs, and to the amount of travel thereon. Writ of review was held to be the proper remedy. As explained in *Oregon City II,* the application of the statute required an investigation and inquiry, the exercise of discretion and judgment which was properly held to be the exercise of judicial functions. 118 Or at 553.

> *"By the time of the later case, the statute had been changed to require distributions of road funds * * * in such proportion as the amount of taxable property in each district shall bear to the whole amount of taxable property in the county * * *. In holding that a writ of review was not an available remedy in that later case, the court noted:*

> " 'The statute defines specifically what shall be done by the County Court in making the apportionment. No discretion in making the apportionment is left to the County Court. No inquiry is to be made nor is any judgment to be exercised by that court. Its sole duty is confined to ascertaining by computation the amount of taxes which is to be apportioned to the several road districts * * *. The County Court is not called upon, therefore, to exercise any judicial function in making the apportionment of taxes properly allowable to the city road districts.' 118 Or at 552-53.

> *"The actions of the county court in Oregon City II appear to have been the kind of ministerial acts described in Hodgdon v. Goodspeed,* 60 Or 1, 5, 118 P 167 (1911):

> " 'A ministerial act consists in the discharge of some duty enjoined by law upon one or more persons, who, in obeying the rule prescribed, exercise no judgment or discretion regarding the matter.' " 53 Or App at 23-24. (Emphasis supplied in part.)

■ The apportionment provisions of *former* ORS 275.275(2) are similar to those discussed in dicta in *Valsetz.* Both define specifically what shall be done by the county commissioners in computing the distributions to each taxing entity. The computation formulations are statutorily prescribed, and the commissioners have no discretion in determining each entity's share. We conclude that the acts of the commissioners here are the kinds of ministerial acts described

in *Hodgdon v. Goodspeed, supra,* and in *Valsetz.* Therefore, the trial court correctly concluded that declaratory relief was the proper remedy.

■ ■        Defendants next assign as error the trial court's conclusion that the limitation provisions of ORS 34.030 do not bar plaintiffs from prosecuting their claim. The trial court found:

> "In reliance on its contention that writ of review is the appropriate remedy for plaintiffs in this case, defendant has asserted the defense of statute of limitations. Since I find that the remedy of declaratory judgment is not merely an alternative remedy to that of writ of review, the sixty day period for filing the petition is not applicable and the filing of the complaint for declaratory relief was timely.

> "Assuming solely for the sake of argument that writ of review were the appropriate remedy, I believe that the filing of plaintiff's complaint was timely. Assuming that the period of limitations began to run on June 24th when the distribution order was entered, the sixty day period of limitations established by ORS 34.030 would not have run prior to the filing of plaintiff's complaint on August 5, 1981."

Defendants argue that, even if declaratory relief were the proper remedy, the applicable statute of limitations governing plaintiffs' claim is the same as that for writs of review, *i.e.,* 60 days. ORS 34.030. They rely on *Brooks v. Dierker,* 275 Or 619, 552 P2d 533 (1976). There, the Supreme Court held that, when declaratory relief is sought as an alternative remedy to a writ of review, the limitation period for filing the declaratory judgment complaint is governed by ORS 34.030. However, *Brooks'* rationale rests in part on the court's holding that declaratory relief was an alternative remedy to a writ of review. That is not our holding here. A writ of review is not available to plaintiffs. The trial court correctly concluded that ORS 34.030 does not apply.[4]

---

[4] Even if declaratory relief were a remedy alternative to a writ of review, this action was commenced within 60 days. Nothing in the record establishes that plaintiffs knew that a final decision had been made by the county commissioners to retain the interest until the date of distribution of the mineral lease principal as the parties agree had happened in previous years. The "identifiable public event that could be viewed as the final decision," *Lyford v. Board of Commissioners for Benton County,* 59 Or App 585, 591, 651 P2d 1355 (1982), *rev den* 294 Or 460 (1983), was June 24, 1981, the date of distribution of the principal. Because plaintiffs filed their amended complaint for declaratory judgment, alternative petition for a writ of review or a writ of mandamus on July 6, 1981, they filed timely if ORS 34.030 applied.

■     Defendants next contend that the trial court erred in allowing four of the original defendants to be redesignated as plaintiffs. We review to determine whether the trial court abused its discretion. *See Hamilton v. State,* 42 Or App 821, 832, 601 P2d 882 (1979). Defendants argue that the trial court incorrectly applied the law regarding amendments of pleadings. We find that this contention lacks merit.

The original complaint named each entity that had an interest in the funds as a defendant. It states:

> "The remaining defendants are public taxing bodies, either wholly or partly within Columbia County and are each political subdivisions of the State of Oregon, and are all of the public bodies, along with plaintiff and Columbia County, entitled to receive funds from the sale or lease of land upon tax foreclosure sale and sale or lease of oil and gas rights by Columbia County under ORS 275.275. Their inclusion herein is necessary for a complete adjudication of the rights of the paties hereinafter described. They will be collectively referred to herein as 'defendant district.' "

It is clear, therefore, that defendants were on notice that most of the co-defendants' real interest in the litigation was the same as plaintiffs'. Thus, defendants suffered no prejudice as a result of the redesignation of the parties. All that it accomplished was to change the placement of the parties in accordance with their real interest in the litigation. Each of the parties could have filed a cross-claim against defendants. *See* ORCP 22B (1), (2). We find no abuse of discretion.

■     Defendants next contend that the trial court erred in dismissing defendants' estoppel claim. They argue that plaintiffs should be estopped from claiming the interest from 1980-81 leases, the period at issue here, because plaintiffs "stood by" and remained silent while defendants dealt with plaintiffs' property (the interest). Defendants allege that the county included the interest in its 1981 budget in reliance on plaintiffs' acquiescence. According to defendants, if plaintiffs are not estopped, the county will be in the position of having adjusted its tax levies in reliance on the inclusion of the interest and it will be unable to levy to recoup the loss of interest income.

Defendants predicate their estoppel argument on *Belleville v. Davis,* 262 Or 387, 498 P2d 744 (1972). There the Supreme Court approved estoppel when a party merely "stands by" while another deals with his property:

> "The second branch [of estoppel] does not depend upon positive misrepresentation, but is based upon a mere failure to take action. It arises where the party 'stands by' and allows another to deal with his property, or to incur some liability toward him, without informing the other of his mistake. * * * The law of estoppel creates a duty to speak, under penalty of loss of the right to assert the truth at a later time. * * *" 262 Or at 397 n 6.

*Belleville* concerned litigation between private parties. Mere acquiescence does not give rise to estoppel where a governmental entity is involved. There must be some affirmative act by the governmental entity. *City of Molalla v. Coover, et ux,* 192 Or 233, 235 P2d 142 (1951); *Douglas County v. Umpqua Valley Grange,* 45 Or App 739, 745, 609 P2d 415 (1980); *see Wiggins v. Barrett & Associates,* 295 Or 679, 699, 669 P2d 1132 (1983) (Linde, J., specially concurring).

Defendants also rely on *Brown v. Portland School District No. 1,* 291 Or 77, 628 P2d 1183 (1981). They argue that in *Brown* the Supreme Court incorporated *Belleville's* estoppel analysis when referring to estoppel of a governmental entity. We disagree. *Brown* did not address that question. The *Brown* court merely set out plaintiff's argument that estoppel should apply where a governmental entity "stands by" without action. It then concluded that plaintiff's argument was unsupported by the evidence. It did not resolve the question of "passive estoppel" as applied to a governmental entity. *Brown* did not overrule the express holding of *City of Molalla v. Coover, supra.* There is no evidence here that plaintiffs did any affirmative act on which defendants reasonably could have relied when they included the interest on mineral lease income in the county's 1982 budget. Plaintiffs are not estopped to assert these claims.

■ Defendants attack the trial court's conclusion that plaintiffs are entitled to the interest, arguing, *inter alia,* that the trial court misinterpreted ORS 294.080, which provides:

> "(1) Except as provided in subsections (2) and (3) of this section, the county treasurer shall credit to the general fund of

the county all interest received from any investment made from the general cash balance of any funds in the hands of the county treasurer. If the entire investment is made from a specific fund, however, the treasurer shall credit the interest to the fund from which the investment was made.

"* * * * *

"(3) Interest earned by investment of any moneys received by the county treasurer from any source, which moneys have been designated for a particular municipal corporation as defined in ORS 294.311(19), shall be credited to the account of the particular municipal corporation and not to any county fund."

The trial court found, in pertinent part:

"Counsel for Columbia County School District No. 13 contends that our Court of Appeals has reached a contrary conclusion, citing for that proposition *Lane Co. v. Paulus,* 57 Or App 297 (1982) and *Urban Renewal v. Swank,* 54 Or App 591 (1981). In the former case, the Court of Appeals construed the words 'general cash balance' in subsection (1) of ORS 294.080 to include only the residual amounts from special funds which the County Treasurer had on hand to meet current demand obligations. That Court concluded that 'the Legislature could not have meant both to limit the counties' discretion over interest allocations and to give them what is, in reality, uncontrolled discretion over which funds shall receive interest.' It is my conclusion that this observation applies to the present case.

"In *Lane Co. v. Paulus, supra,* the Court was confronted with the proper distribution of interest from federal forest revenues in the county road fund which were governed by ORS 293.560 and ORS 294.060(1). In comparing those statutes with ORS 275.275, I find that the latter funds are no less a specific fund and that accordingly a County Treasurer does not have discretion to co-mingle them with other county revenues for investment and credit interest earned to the county general fund pursuant to ORS 294.080."

Defendants assert that the nature of the funds here is distinguishable from that of those in *Lane County v. Paulus,* 57 Or App 297, 644 P2d 616, *rev den* 293 Or 456 (1982), and *Urban Renewal v. Swank,* 54 Or App 591, 635 P2d 1344 (1981), *rev den* 292 Or 450 (1982), because the county is unable to "designate" each individual entity's funds pursuant to ORS 294.080(3), until each taxing district has levied. Consequently,

they argue, there are no funds "designated" to the taxing entities until the end of the fiscal year, after the interest in question has been earned. There is, therefore, no "specific fund" entitled to earn interest pursuant to ORS 294.080(3) until the county designates the fund due a municipal corporation.

Defendants' argument assumes that the county is the entity which controls the designation of funds for purposes of ORS 294.080. It is not. The legislature designated funds which go to each municipal corporation. *Former* ORS 275.275. The county's apportionment of those funds is nothing more than a mathematical calculation pursuant to the statutory formula. *Former* ORS 275.275(2). The county has no discretion to select which entities receive funds or to decide how much each entity receives.

■          Defendants also argue that, because the county treasurer deposited the principal received from the mineral leases in the general fund, those funds are thereby "general funds," and ORS 294.080(3) does not apply to interest earned on the principal because it is not a "specific fund." We disagree.

In *Lane County v. Paulus, supra,* we explained that a county may not change the nature of funds designated by statute to belong to a specific governmental entity by commingling those funds with others in the county's general fund:

"The county understands the statute [ORS 294.080(1)] to give counties unrestricted authority to decide whether special funds will be segregated or commingled with other county revenue for investment; once that decision is made, however, the interest on commingled investments must be credited to the general fund, and all interest on segregated investments must be credited to the specific funds from which they are made. It is, of course, true that the legislature may enact a statute that has the dual objectives of defining a public body's authority to commingle funds for investment and of regulating the allocation of the investment income among the funds. But the legislature cannot enact a statute—or at least we cannot ascribe to it the intent to do so—under which the methods of achieving the two objectives nullify one another. *The legislature could not have intended to provide in the same statute, first, that interest on segregated investments of specific funds must be credited to those funds and, second,*

*that counties may divert all interest on their investments to the general fund by choosing to commingle funds for investment.* The legislature could not have meant both to limit the counties' discretion over interest allocation and to give them what is, in reality, uncontrolled discretion over which funds will receive interest. Conversely, there is no internal inconsistency in defendant's interpretation of the statute, and that interpretation also gives effect to the statute's apparent objectives of protecting the integrity of special funds and giving counties the necessary latitude to make commingled investments of monies which cannot be readily identified or segregated by fund. * * *" 57 Or App at 301. (Emphasis supplied in part.)

*Lane County* controls here. We do not believe that the legislature intended that a county have unbridled discretion to divert arbitrarily interest earned on funds that a statute specifically designates as belonging to other public bodies. The trial court correctly ordered that the mineral lease interest be distributed to plaintiffs.

As their ninth assignment of error, defendants contend that the trial court erred in awarding future interest to plaintiffs. They argue that 41 municipal corporations share in the principal distribution and, thus, have a claim for interest generated by those funds. Plaintiffs respond that this issue was not raised below and was not preserved for appeal. They make the same objection to defendants' tenth assignment: that the trial court erred in awarding each named plaintiff more than its prospective *pro rata* share of the interest. We agree that those assignments were not preserved. Following trial, the court mailed its opinion to counsel. Nearly a month passed before judgment was entered. Defendants could have raised those issues, thereby giving the court an opportunity to rule on them. They did not do so.

Nevertheless, we conclude that we should consider defendants' ninth and tenth assignments of error on their merits because they are questions of public importance and substantial public money is at issue in this litigation which involves several dozen public bodies. *See State v. Hickman,* 273 Or 358, 360, 540 P2d 1406 (1974); *Garrison v. Pacific Northwest Bell,* 45 Or App 523, 527, 608 P2d 1206 (1980).

Paragraph 10 of the judgment reads:

"IT IS HEREBY ORDERED, ADJUDGED and DECREED as follows:

"1. The plaintiffs, namely: COLUMBIA COUNTY SCHOOL DISTRICT NO. 13, CITY OF ST. HELENS, CLATSKANIE KNAPPA SCHOOL DISTRICT NO. 5-J, SCAPPOOSE SCHOOL DISTRICT NO. 1-J, ST. HELENS RURAL FIRE PROTECTION DISTRICT, ST. HELENS SCHOOL DISTRICT NO. 502, are entitled to receive each fiscal year the accrued interest on funds received by Columbia County from the sale or lease of tax foreclosed lands and oil and gas rights."

Standing alone, and given its most literal interpretation, the judgment would seem to award all future interest to the six named plaintiffs. However, we conclude that, when read in its entirety, the judgment does not require such a result.

The entire interest is $276,391.77. The interest awarded to the six plaintiffs is $208,738.98. Thus, they received only the interest earned on the principal due each of them. The trial court did not order that all of the future interest be distributed to the six named plaintiffs. They each received their *pro-rata* share of the interest. The total interest, of course, is distributed to all the entities entitled under the statute.

Finally, defendants contend that the trial court erred in not awarding 10 percent of the earned interest to the county before computing the amount to be distributed to plaintiffs. They maintain that *former* ORS 275.275(1) provided that the proceeds shall first be applied to refund to the county all costs and expenses incurred in the maintenance and supervision of the income-producing property before distribution. They argue the the county is entitled to not less than 10 percent of the principal *and interest* before distribution. *Former* ORS 275.275(1) provided in pertinent part:

"The proceeds arising under ORS 275.090 to 275.310 * * * shall be applied to refund the county general fund for all the costs and expenses incurred by the county in the maintenance and supervision of such properties and in any suits by it to quiet its title to property sold; *provided, that the proceeds so applied as refunds shall not amount to less than 10 percent of the total proceeds.*" (Emphasis supplied.)

The statute provided that the county shall receive a minimum of 10 percent of the "total" proceeds as administrative costs.

The interest earned on the principal received from the mineral leases is a component of the "total proceeds." Defendants' contention is, therefore, correct. The county is entitled to 10 percent of the principal *and interest.*

Reversed and remanded with instructions to determine defendant county's entitlement to costs and expenses pursuant to *former* ORS 275.275; affirmed in all other respects.