**In re Amos VALDEZ, Peggy Valdez, Debtors.**

**No. 99–6254–HO.**

United States District Court, D. Oregon.

Nov. 15, 1999.

James Esterkin, Portland, OR, Julie Hoffinger, Michael Redden, P.C., Portland, OR, for appellant.

Jian H. Grant, U.S. Dept. of Justice, Washington, DC, for USA.

Susan T. Egnor, Department of Justice, Salem, OR, for Department of Revenue Oregon.

## ORDER

HOGAN, Chief Judge.

Petitioning creditor, Michael Redden, appeals from the order dismissing an involuntary Chapter 7 petition he filed against debtors Amos Valdez and Peggy Valdez.

### *STANDARD*

The bankruptcy court's findings of fact shall not be set aside unless clearly erroneous. Fed. R. Bankr.P. § 8013. Issues of law are reviewed *de novo*. *U.S. v. Horowitz*, 756 F.2d 1400, 1403 (9th Cir. 1985). However, dismissal for lack of good faith is reviewed for an abuse of discretion. *In re Greatwood*, 194 B.R. 637, 639 (9th Cir. BAP 1996), *Affirmed*, 120 F.3d 268 (9th Cir.1997). To the extent that a finding of bad faith requires a finding of fact, it is reviewed for clear error and to the extent that a finding of bad faith requires a legal determination, it is reviewed de novo. *Id.*

## FACTUAL BACKGROUND

On October 11, 1996, debtors filed a joint petition for relief under Chapter 13. The only significant creditors in the case were the Internal Revenue Service (IRS) and the Oregon Department of Revenue (ODR). The IRS and the ODR each filed proofs of claim in the amount of $510,933.25 and $106,466.00 respectively. The debtors objected to each claim.

Eric Haws initially represented the debtors in the Chapter 13 proceedings. Creditor Michael Redden was retained to act as counsel with respect to the tax dispute and eventually became the principal counsel for the debtors. Redden sought to invoke the bankruptcy court's discretionary power to redetermine the debtors' tax liability under 11 U.S.C. § 505(a)(1).

Before a hearing on the claim objections was conducted, the IRS and ODR moved to dismiss the proceeding in its entirety and for partial summary judgment as to the validity of claimed deductions in the debtor's tax returns filed in support of the claim objections. The grounds advanced in the motion to dismiss were that the debtors unlawfully concealed and disposed of assets of the estate. The bankruptcy court granted the motion to dismiss on the grounds of bad faith because it found that the debtors improperly failed to list all assets on the schedules and improperly expended estate assets. The court also found that the debtors principal motivation in filing the bankruptcy was not reorganization of their debt, but use of the bankruptcy court as a forum in which to litigate their disputes with the taxing agencies. The court concluded that bankruptcy court was established to deal with insolvency and the reorganization of debt, not to serve as an alternative forum for tax litigation. Therefore, the court found that good cause existed for dismissal. The court specifically stated that the debtors were precluded from converting the case to a different chapter. The debtors did not appeal the order of dismissal. Redden, soon thereafter, telephoned the debtors to resign from his position as special tax counsel.

The debtors had incurred attorney fees in the amount of $19,978.42 to Redden. Redden, only thirteen days after the Chapter 13 was dismissed, filed an involuntary petition under Chapter 7 against the debtors. The debtors sought Redden's assistance in preparing an answer to the involuntary petition. Redden apparently instructed the debtors that he was now an adverse party and that they should seek independent counsel. Nonetheless, Redden agreed to have his associate prepare an answer and schedules for the debtors while still warning them that he was not acting as their counsel.[1] Two sets of assets were omitted from the schedules- a judgement and debtors' interest in certain trusts. The debtors admitted all significant factual allegations in Redden's petition.

On July 22, 1998, the IRS filed a proof of claim in the amount of $476,435.94 and on August 21, 1998, the ODR filed a proof of claim in the amount of $151,270.11. An order for relief was entered on August 14, 1998. The debtors and petitioning creditor filed objections to the IRS and the ODR claims. The debtors objected contending that no tax was due at all. Petitioning creditor objected contending that a reduction should be made to account for incorrect disallowance of deductions. He asked that the IRS's claim be allowed as a

---

1. It appears that Redden actually prepared the answers for the debtors in the involuntary proceeding. See Excerpt of Record of Appellee, ODR (# 82) at Tab D (Redden writes: "At your request, I have prepared Answers for each of you with respect to the above referenced bankruptcy cases. These Answers were prepared based on my conversations with you, in which you agreed that all of the items stated in the Involuntary Petition were true, except for the statement that Eric Haws is currently your attorney.)" The debtors did not list Redden's associate as the preparer of schedules. Peggy Valdez told the trustee that they had not received any advice in the bankruptcy. *Id.* at Tab A, p. 55–56.

**390**

priority claim of $2,463.06 and a general unsecured claim of $492.03 and asked that ODR's claim be allowed as priority claim for $1,313.00 and a general unsecured claim for $5,064.77.

The IRS and the ODR moved to dismiss the petition. The court dismissed the Chapter 7 on two principal grounds: first, Redden failed to meet the standard for relief under section 303(h) of the bankruptcy code; and second, Redden's and debtors' collusive acts constituted grounds for dismissal under section 707 of the code. The court also noted its prior ruling that there are other remedies in other courts for debtors and Redden. The court further noted it is not the appropriate forum for tax litigation purely because the debtors failed to avail themselves of a more appropriate forum in a timely manner. Petitioning creditor Redden appeals the decision to dismiss the Chapter 7 proceedings.

### DISCUSSION

Redden asserts that he filed the involuntary petition to protect his claim by preventing the tax creditors from obtaining a disproportionate share of the available assets by collecting the "incorrect" taxes from debtors. *See General Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1502 (11th Cir.1997) (involuntary petition may be used to protect a creditor against other creditors' from receiving disproportionate share of debtor's assets). Redden further asserts that the bankruptcy court erred: in finding that the debtor and petitioning creditor acted in concert and in bad faith; in finding that the involuntary petition was an attempt to circumvent the bankruptcy court's previous order; by failing to deny the motion to dismiss as untimely; in applying the single creditor rule to dismiss the case; in finding that the tax debts were subject to a bona fide dispute; and in finding that the debtors were generally paying their debts as they came due.

The bankruptcy court properly concluded that the petition was prosecuted in bad faith. The court also properly concluded that relief was not available where the debtors were generally paying their undisputed debts as they came due. Thus, the bankruptcy court's decision is affirmed.

### A. Bad Faith

 Good faith is presumed on the part of the party or parties filing an involuntary petition and the burden of proving bad faith rests on the objecting party. *In re Crown Sportswear, Inc.*, 575 F.2d 991, 993–94 (1st Cir.1978); *In re Alta Title Co.*, 55 B.R. 133 (Bankr.D.Utah 1985); *In re Rite–Cap, Inc.*, 1 B.R. 740, 742 (Bankr. D.R.I.1979). This burden is a significant one, as the objecting party must prove bad faith by at least a preponderance of the evidence. *See In re Alta Title Co.*, 55 B.R. 133, 13 B.C.D. at 1039–40.

The Bankruptcy court found that cause for dismissal existed under 11 U.S.C. § 707 because the involuntary petition and the debtors' acquiescence were intended to establish relief under the code for improper purposes, i.e., to circumvent the court's previous order in the prior bankruptcy. The court found that petition and answer were collusive in advancing this improper purpose.

#### 1. Collusion

 To dismiss an involuntary bankruptcy as collusive there must appear to be concerted action between the debtors and the petitioning creditor and these parties must fraudulently invoke the jurisdiction of the bankruptcy court. *In re Kingston Square Assoc's*, 214 B.R. 713, 725 (Bankr. S.D.N.Y.1997). In other words, the two parties must act for a wrongful purpose. *Id.*

 In this case, although it does not appear that the parties entered into a concerted action to file the petition, the evidence does support a finding that the parties colluded to circumvent the previous

order dismissing the Chapter 13 bankruptcy proceeding. Redden filed his petition almost immediately after the Chapter 13 was dismissed. The debtors contacted him to prepare an answer and schedules. The parties concealed Redden's role in preparing the debtors' response. Redden or Redden's associate prepared responses admitting the material allegation that the debtors were not paying debts as they generally came due which debtor Peggy Alvarez later admitted was not true. As discussed below, the debtors were generally paying undisputed debts as they came due. Redden did not attempt to work out a payment schedule nor did he try to obtain a judgment against the debtors. Redden asserts that it would have been futile to seek a judgment as the tax liens were superior to his claim and would have eaten up the debtors' ability to pay. However, whether a payment plan on the tax assessments could be worked out does not appear to have been investigated. Thus, because the debtors were generally paying their undisputed debts as they came due, the court did not have the authority to enter an order of relief.

In *In re Winn*, 49 B.R. 237, 239–40 (Bankr.M.D.Fla.1985), the court stated in dismissing an involuntary petition due to bad faith:

> While this Court is satisfied that there was no actual collusion between the Debtor and the petitioning creditors, this record leaves no doubt that it was the last desperate effort of the Debtor to get back under the protection of the Bankruptcy Court for the primary, if not sole, purpose to frustrate [creditor] again in its efforts to collect its judgment. While Mr. Earle consented to be a petitioning creditor, he certainly was not the author of the petition and only agreed to be one of the petitioning creditors because the realization that unless there is a bankruptcy case, he may never be able to recover some return on his claim.... [I]t is evident that the entire underlying scheme of this involuntary

Chapter 11 was merely a second attempt by the Debtor to accomplish indirectly what he was not able to accomplish directly with his original voluntary petition and nothing more than an attempt to invoke the jurisdiction of this Court for the sole purpose to avoid the consequences of the judgment imposed by the District Court in Mississippi and to avoid the consequences of the previous Order of Dismissal entered by this Court on September 5, 1984 in the Voluntary Chapter 11 case.

The collusive actions of the debtor and petitioning creditor in filing the response to the petition, was a bad faith attempt to avoid the previous order dismissing the voluntary petition.

Redden, however, argues that the evidence does not support a finding that the parties were attempting to circumvent the court's previous order. However, Redden and debtors' sought to litigate the propriety of the tax assessments in bankruptcy court so as to relieve a significant part of that debt, paving the way for him to collect his fees without any encumbrances from the IRS and the ODR in his way. The previous order held that the bankruptcy court was not the appropriate forum for such a dispute and such order was not appealed. Further, as alluded to above, the court did not have the authority to enter an order of relief because the debtors were generally paying their undisputed debts as they came due.

### B. *Paying Debts as They Come Due & Bona Fide Dispute*

11 U.S.C. § 303(h) provides:

If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—

(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute; or

(2) within 120 days before the date of the filing of the petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

The Judiciary Committee notes clarify section h:

Subsection (h) provides the standard for an order for relief on an involuntary petition. If the petition is not timely controverted (the Rules of Bankruptcy Procedure will fix time limits), the court orders relief after a trial, only if the debtor is generally unable to pay its debts as they mature, or if the debtor has failed to pay a major portion of his debts as they become due, or if a custodian was appointed during the 90–day period preceding the filing of the petition. The first two tests are variations of the equity insolvency test.

11 U.S.C. § 303, Notes of Committee on the Judiciary, Senate Report No. 95–989.

■■■ Petitioning creditor has the burden to prove that debtors are not generally paying their debts as they come due and that there is no bona fide dispute as to the claims in issue. *See In re Rubin,* 769 F.2d 611, 615 (9th Cir.1985). Whether the debtors are generally paying their debts as they come due is analyzed under a totality of the circumstances approach. A finding that the debtors are generally not paying their debts requires a more general showing of the debtors' financial condition and debt structure than merely establishing the existence of a few unpaid debts. *See In re Dill,* 731 F.2d 629, 632 (9th Cir.1984). The legislative history of section 303(h) points to insistence by Congress on generality of default. *In re B.D. Discount International Corp.,* 701 F.2d 1071, 1076 (2nd Cir.1983). The petition date is the measuring date for whether the debtors are generally paying their debts as they come due. *In the Matter of Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.,* 779 F.2d 471, 475 (9th Cir.1985).

■■■ In this case, Redden or Redden's associate prepared the debtors' Chapter 7 schedules. The Schedules show monthly expenditures of $7,370 and monthly income of $9,320. Appellant's Excerpt of Record at Tab 3. Peggy Valdez admitted that unless she and her husband had a dispute about a bill, they generally paid their bills when they came due. Excerpt of Record of Appellee ODR, Tab A, p. 55.

Petitioning creditor states that in addition to not paying their tax debt, debtors had not payed Eric Haws, and himself. At the time of the filing of the petition, debtors noted that Haws was a creditor, but that at the time nothing was due. Appellant's Excerpt of Record at Tab 3. Redden does not provide evidence to show that demand for payment was made by Haws and that he was not being paid when due. Further, the previous bankruptcy had been dismissed only thirteen days prior and Redden did not even attempt to work out a payment schedule with the debtors. Thus, it appears that, with the exception of the tax debt, the only debt not being paid when due was the debt to the petitioning creditor who made no attempt to collect the debt through non-bankruptcy means. Viewing the total number of debts and the proportion of debts being paid as of the date of the petition, the debtors were generally paying most of their undisputed debts.

Petitioning creditor argues that most of the debtors' income was produced by property subject to the tax liens and thus after the IRS seized the property the debtors would not have the ability to pay him. However, as noted, as of the date of the petition, the debtors were generally paying their undisputed debts. Petitioning creditor also argues that the tax debt was not subject to a dispute (despite the fact that

his position in bankruptcy is that the tax levies were grossly inflated).

■ The debtors took the position that the entire tax claim was disputed. Redden asserts that he at least found no dispute as to a portion of the tax claim. What is required is that a substantial portion of the debt be disputed for it to fail to qualify to be subject to a dispute for purposes of section 303(h). *See In re Owens,* 151 B.R. 865, 869 and n. 1 (Bankr.E.D.Tenn.1992). Thus, even if a small portion of the tax claim is not subject to dispute, as Redden asserts, the majority of the claim is still disputed and thus sufficient to create a debt subject to a dispute within the meaning of section 303(h). Redden also claims that, at any rate, the entire debt is not subject to a *bona fide* dispute.

■ The purpose of the not subject to bona fide dispute requirement is to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is legal or factual so that the creditor may not use the threat of involuntary proceedings as a club against debtors who would rather pay up than suffer the stigma of involuntary bankruptcy proceedings. *In re Lough,* 57 B.R. 993, 997–98 (Bankr.E.D.Mich.1986). Redden argues that outside of Bankruptcy court, there is no basis, factual or legal, for the debtors failure to pay the taxing agencies.[2]

The liens were properly assessed and outside of bankruptcy (where the court has discretion to redetermine the tax debts under 11 U.S.C. § 505), the debtors could not challenge the debts without first paying the amount of the assessments and then filing for a refund. If the taxing agencies denied the refund the debtors would then have recourse to challenge the levies. Redden argues that the debtors could not possibly seek this alternative as they did not have enough assets to satisfy the tax debt and could thus never seek a refund. Even if this inability is enough to render the debt not subject to a bona fide dispute,[3] it is undisputed that debtors raised a legitimate dispute to the tax claims in the bankruptcy proceeding under 11 U.S.C. § 505(a)(1). The Bankruptcy court did not err in finding that the tax debts were subject to a bona fide dispute.[4]

## C. Timeliness

■ Redden next argues that the bankruptcy court should have denied the motion to dismiss as untimely. However, until the debtor and petitioning creditor made their objections to the IRS and the ODR claims, these agencies had no reason to believe that the debtors and Redden were going to seek to have the court do what it had already determined it would not do in the previous proceeding. Further, there is nothing in the record to show that the taxing authorities had notice of the commencement of the case. Once objections to the claims were filed the agencies timely moved to dismiss. At any rate, the timeliness argument can only be made on equitable grounds and there is authority that suggests that before the government can be estopped from seeking the dismissal it must commit some affirmative act of misconduct. *See, e.g., Watkins v.*

2. Of course, this argument demonstrates that the IRS and the ODR would not use involuntary bankruptcy as a club to get the debtors to pay the assessments.

3. Redden cites *In re Ledgemere Land Corp.,* 135 B.R. 193, 196 (Bankr.D.Mass.1991) for the proposition that the primary purpose of 11 U.S.C. § 505 is to prevent creditors from being prejudiced by a debtor's failure to contest assessed taxes. That case dealt with whether a bankruptcy court has jurisdiction to adjudicate refund claims on property taxes

that have not been timely requested. The Judge in the *Ledgemere Land Corp.* case later determined that courts are without jurisdiction to adjudicate a claim for a refund unless it has been timely filed with the appropriate agency.

4. *But see In re Dill,* 731 F.2d at 632 (ability to execute on a judgment despite pending appeal favored a finding, on the balance of equities, that the debt should be included in the totality test for determining whether the debtor is paying debts generally as they become due).

394

*United States Army,* 875 F.2d 699, 707 (9th Cir.1989); *State ex rel. Columbia County School Dist. v. Columbia County,* 66 Or.App. 237, 246, 674 P.2d 608 (1983). Redden asserts no misconduct on the part of either the state or the federal government.

### CONCLUSION

The bankruptcy court properly dismissed the case because the debtors were generally paying their undisputed debts as they came due and thus there was no basis for entry of relief under 11 U.S.C. § 303(h). Further, the court also properly dismissed the involuntary petition under 11 U.S.C. § 707 because of the bad faith collusion between the debtors and the petitioning creditor to avoid the previous order of the Chapter 13 court. The bankruptcy court's order dismissing the involuntary petition is affirmed.